HENDERSON, Executor, *v.* WADSWORTH.

HOWARD L. HENDERSON *v.* SAME.

WILLIAM H. HENDERSON *v.* SAME.

WARREN N. HENDERSON *v.* SAME.

McCARTHY & Another *v.* SAME.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR
THE DISTRICT OF KENTUCKY.

Submitted January 6, 1885.—Decided November 2, 1885.

Where suit is brought against heirs to enforce their liability for the payment
of a note on which their ancestor was bound, and they plead neither coun-
ter-claim nor set-off, and ask no affirmative relief, and separate judgments
are rendered against each for his proportionate share, this court has juris-
diction in error only over those judgments which exceed five thousand
dollars.

Under the Civil Code of Louisiana, a widow, even where she has accepted the
succession of her husband without benefit of inventory, is not liable *in solido*
with the surviving partners for the payment of a note made by the firm of
which her husband was a member ; and payments made on the note by the
surviving partners cannot be given in evidence to show interruption of pre-
scription running in her favor.

Mrs. H. Estelle Wadsworth, the defendant in error in these
cases, was the plaintiff in the Circuit Court, where she brought
a joint action at law against the several plaintiffs in error, and
John G. Gaines and Stephen Z. Relf. The facts shown by
the record were as follows.:

On and long before the 8th day of November, 1860, William
Henderson and the defendants John G. Gaines and Stephen
Z. Relf, were engaged in business as commercial partners in the
city of New Orleans under the name of Henderson & Gaines,
and on the day above mentioned, for the consideration of
$30,450, money lent to them by the plaintiff, they made and
delivered to her their note, of which the following is a copy :

"NEW ORLEANS, 8*th November*, 1860.

"$30,450. On or before the fifth of May, 1867, we promise to pay, for value received, to the order of Mrs. H. Estelle Wadsworth, fifteen thousand dollars, and the further sum of fifteen thousand four hundred and fifty dollars, on or before the twentieth day of the same month and year, (together thirty thousand four hundred and fifty dollars,) with interest at the rate of eight per cent. per annum, the interest to be paid semi-annually on the fifteenth day of May and November of each year.

"HENDERSON & GAINES."

On July 1, 1866, the firm of Henderson & Gaines was dissolved, Henderson retiring, and was succeeded by the firm of Gaines & Relf, composed of the other two members of the dissolved firm. The new firm, Gaines & Relf, bought all the personal property and assets of the old firm, assumed all its liabilities, including the note above mentioned, and agreed to exonerate Henderson.

The firm of Henderson & Gaines, while it continued, paid the interest as it fell due on the note above mentioned up to May 15, 1867, and Gaines & Relf thereafter up to May, 1877.

William Henderson died on May 1, 1870, in the city of New Orleans, where he had been domiciled since the year 1860 and before. He left as his widow Eleanor Ann Henderson, and as his sole heirs at law the defendants, William H. Henderson, Howard L. Henderson, Warren N. Henderson, and Victorine S. Henderson, the latter of whom had intermarried with the defendant M. C. McCarthy, all of full age, and all domiciled in the city of New Orleans. The widow and children subsequently removed to the State of Kentucky, where, on July 27, 1880, the widow died. Her son, William H. Henderson, was qualified as executor of her last will and testament.

In June, 1877, the firm of Gaines & Relf was adjudicated bankrupt. On April 10, 1882, the present suit was brought by Mrs. H. Estelle Wadsworth, the payee, on the note of Henderson & Gaines, against William H. Henderson individually and as the executor of the last will of the widow, Eleanor Ann Henderson,

and against the other persons above mentioned, as the heirs of William Henderson, and against John G. Gaines and Stephen Z. Relf. M. C. McCarthy was joined as a defendant with his wife, Victorine S. McCarthy. The petition alleged that the widow and heirs of William Henderson had accepted his' succession, purely and simply, without the benefit of inventory, and had taken, and upon their own petition had been put in possession of his estate, the said Eleanor Ann, as widow, in· community of one-half, and the heirs of the other undivided half of the community property, subject to the usufruct of the same in favor of their mother,, the said Eleanor Ann Henderson, whereby the said widow and heirs became personally liable for the payment of all the debts of said William Henderson, deceased, including the debt sued on, in the following proportions—the widow, Eleanor Ann Henderson, for one-half, and each of the above-mentioned heirs for one-fourth. The petition, therefore, prayed for judgment against Gaines and Relf for the whole amount due on the note; for judgment against William H. Henderson, as an executor of Eleanor Ann Henderson, for one-half; and for judgment against each of the heirs of William Henderson for one-fourth of said amount.

The defendants, except Gaines and·Relf, who never appeared or made any defence, filed a joint and several answer to the petition, in which they denied that they had accepted the succession of William Henderson, purely and simply, without·benefit of inventory; but, as this issue was specially found against them by the verdict of the jury, it must be taken as· a fact in the case that they did so accept the succession.

They also, by way of defence, made the following averments:

"3rd. And for further answer these defendants say the pretended note sued on herein was made, and on its face made payable, in New Orleans, and State of Louisiana, and by its terms matured and fell due not later than the eighth and twenty-third days of May, A.D. 1867, while said William Henderson and John G. Gaines and Stephen· Z. Relf resided in said city and State, and plaintiff's supposed cause of action, in her petition set out, accrued to her and against said William Henderson, in

the said State, and not elsewhere, but did not accrue within five years next before the bringing of this suit, during all which time, as was and is well known to plaintiff, all these defendants and said Eleanor Henderson resided in said city of New Orleans, and State of Louisiana, and by the law of said State, in force at the date of said pretended note and continuously since, and now in force therein, said pretended note was and is prescribed in five years next after the date of the maturity thereof, as aforesaid, and being so prescribed, no action thereon can be maintained in Kentucky under her laws. Wherefore these defendants plead and rely on the lapse of time and statute of limitation in bar of plaintiff's right of recovery herein against them."

The plaintiff replied to this defence, that the prescription and limitation so pleaded in bar had been interrupted and prevented from running against her right of recovery, in each and every year from the maturity of said note up to the time of bringing the action, by frequent acknowledgments of said debt by the firm of Henderson & Gaines and its members, and by the firm of Gaines & Relf, and by defendants Gaines and Relf, debtors bound *in solido* with William Henderson for the payment of said debt.

The defendants rejoined, taking issue on the replication of the plaintiff.

Upon the trial of the cause, the court, against the objection of the defendants, admitted evidence tending to show payments made upon the note by the firm of Gaines & Relf, after the death of William Henderson, and by the assignee of Gaines & Relf, after their bankruptcy, the purpose of such evidence being to show interruption of the prescription set up by the defendants against a recovery on the note.

When the testimony was closed, the defendants moved the court to charge the jury as follows: " That any payments made on the paper sued on herein by the firm of Gaines & Relf, or the assignee or liquidator of said firm, after William Henderson's death, did not interrupt prescription as to said Henderson, nor would any acknowledgment of said paper by said firm after said Henderson's death have that effect; " but

the court overruled the motion, and refused to charge the jury as prayed for by the defendants; to which ruling of the court the defendants, and each of them, then excepted.

The jury returned a verdict in favor of the plaintiff and assessed separate and distinct damages against each of the defendants; and upon this verdict the court rendered separate judgments in favor of the plaintiff against William H. Henderson, as executor of Eleanor Ann Henderson, for $17,172.25, and against William H. Henderson individually, Howard L. Henderson, and Warren N. Henderson, each for $4,293.18; and against Victorine S. McCarthy and M. C. McCarthy, her husband, for a like sum.

The parties defendant to these judgments prosecuted separate writs of error to each judgment, and each gave a separate bond to prosecute the writ of error to effect and answer all damages and costs on failure to make good the plea. But one record was brought to this court, to which all the writs of error had reference.

In each of the cases, except the one in which William H. Henderson, executor, was plaintiff in error, the defendant in error filed a motion to dismiss the writ of error "for want of jurisdiction, because the amount in dispute did not exceed five thousand dollars, and was not sufficient to sustain a writ of error."

*Mr. Walter Evans* and *Mr. Thomas L. Bayne* for plaintiffs in error.

*Mr. Augustus E. Willson*, *Mr. Charles B. Wilby*, and *Mr. Gustavus H. Wald* for defendant in error. A further brief on behalf of same, so far as the cases were "affected by the laws of Louisiana," was also filed, signed by *Mr. William F. Mellen*, *Mr. D. C. Mellen*, and *Mr. Julius Aroni*.

By the manner in which the widow and children accepted the succession of William Henderson, simply and without benefit of inventory, they became personally liable under the laws of Louisiana for the payment of all his debts; the widow for one-half thereof and each of the children for one-eighth there-

of.   Louisiana Civil Code, Articles 1005, 1010, 1013, 1056, 1058, 1421, 1422, 1423, 1427, 2409–2415. · · These laws of Louisiana create a right which may be enforced in Kentucky, by means of a single action at law, against all these defendants.   *Brown* v. *Richardsons*, 1 Martin La. N. S. 202; *Flash* v. *Conn*, 109 U. S. 371.   The right thus created could be asserted and enforced in any Circuit Court of the United States, having jurisdiction of the subject-matter and the parties.   *Dennick* v. *Railroad Co.*, 103 U. S. 11.   The proper mode of asserting and enforcing this right is by an action at law, not by a suit in equity. Indeed it is difficult to imagine what head of equity jurisdiction could be invoked.   There is no discovery wanted, there is no question of trust, of fraud or mistake, of a fund to be administered, or of assets to be marshalled; and this is not an administration suit.   It is an action upon a written instrument, for a sum certain or easily ascertained.   No executor or administrator of William Henderson is a party to the action.   It is an action against the defendants who, by their acts, under the law of Louisiana, have made themselves liable upon the written instrument as if they had signed it; as if they had themselves contracted the debt, or as if they were William Henderson himself.   The liability sought to be enforced in this case is for the debt itself of which the note is the memorial.   The law was so declared by the Court of Appeals of Kentucky in the case of *Trustees* v. *Fleming*, 10 Bush, 234, 239.   If the action were against a single heir of William Henderson, it would not be doubted that the proper remedy is an action at law.   *Flash* · · v. *Conn* is conclusive on that point.   See also *Pollard* v. *Bailey*, 20 Wall. 520; and *Terry* v. *Tubman*, 92 U. S. 156. Our action was analogous to the provisions of the English statute 3 W. & M. c. 14, giving a joint action of debt against devisee and heir, and is in accordance with the provision of the Kentucky Code which permits the joinder of these defendants. *Wilde* v. *Haycraft*, 2 Duvall, 309; *Kittredge* v *Race*, 92 U. S. 116; *Beauregard* v. *Case*, 91 U. S. 134.

If Mrs. Henderson had been living at the time we brought our action, the reasons permitting the joinder of the children as defendants in a single action would have applied in full

force for permitting her to be joined as defendant with them.. And it follows, under the express provision of that section of the Code of Kentucky just referred to, that she having deceased, her personal representative was properly made a defendant in her stead. It is sought to evade the application of § 26 (formerly § 38) of the Kentucky Code, by arguing that Mrs. Henderson was not liable upon the same contract with her children. But that is to ignore the decision of the Court of Appeals of Kentucky in the case of *Trustees* v. *Fleming*, 10 Bush, 234, that the liability enforced in an action of this kind is the liability on the contract, of which the note is the memorial. That contract is the same, a single contract. But it leaves the defendants in no better position, if we assume that the liability is upon their promise, made by all of them at the same time, to pay this note (as well as all other debts of William Henderson), and contained in their petition for the judgment under which they were put in possession of his property. That was a promise made by the widow and the four children simultaneously, and recorded in a single instrument, to pay this note in certain aliquot shares, the widow one-half, and each of the children one-fourth. That brings the case exactly within the authority of *Wilde* v. *Haycraft*, 2 Duvall, 309. It is further argued, that as we sue his four children as personal representatives of William Henderson, we cannot join with them as defendant the executor of a fifth personal representative, his widow. But the fallacy underlying this argument is the assumption that we are suing any one as the personal representative of William Henderson. None of the children are sued in any representative capacity. They are sued in their personal capacity.

As to the delivery of the note, there was evidence tending to show its delivery, and that evidence was submitted by the court to the jury. That was proper : if there had been error, the proper way to review it was by motion for a new trial, not by writ of error. *Schuchardt* v. *Allens*, 1 Wall. 359 ; *Mills* v. *Smith*, 8 Wall. 27. The defendant below met the evidence of the delivery of the note by a request to instruct the jury that it did not warrant a verdict for plaintiff. This request, which

has superseded the ancient practice of demurrer to the evidence, admits every inference and resolves every doubt in favor of the party offering it. *Parks* v. *Ross*, 11 How. 362; *Pleasants* v. *Fant*, 22 Wall. 116. See also *Pawling* v. *United States*, 4 Cranch, 219; *Bank of the United States* v. *Smith*, 11 Wheat. 171.; *Fanshaw* v. *Cocksedge*, 3 Brown P. C. 690; *Dean* v. *Carruth*, 108 Mass. 242; *Davis* v. *Steiner*, 14 Penn. St. 275.

On the undisputed facts it is clear to us that the note was well delivered as matter of law. We understand the rule of law as to delivery of a note to be the same as the rule as to delivery of a deed, and that the rule is this: whenever the grantor does an act showing his intention to relinquish his dominion over the instrument, it is well delivered, although it does not pass from his possession, and that this is particularly true when his continued possession is referable to a fiduciary relation occupied by him towards the grantee, which makes it natural that he should in that capacity have possession of the instrument. *Dean* v. *Carruth*, 108 Mass. 242; *Worth* v. *Case*, 42 N. Y. 362; *McCoy* v. *Hill*, 2 Littell, 372; *Lysaght* v. *Bryant*, 9 C. B. 46; *Williams* v. *Galt*, 95 Ill. 172; *Doe* v. *Knight*, 5 B. & C. 671; *Carson* v. *Phelps*, 40 Maryland, 73; *Grugeon* v. *Gerrard*, 4 Yo. & Col. Exch. Eq. 119; *Diehl* v. *Emig*, 65 Penn. St. 320; *Tallman* v. *Cooke*, 39 Indiana, 402; *Newton* v. *Bealer*, 41 Indiana, 334; *Stevens* v. *Hatch*, 6 Minn. 64; 2 Strob. Eq. 370.

As to the statute of limitations. The Kentucky statute of limitations, set up in defence below, so far as applicable, is as follows: " An action upon a bill of exchange, check, draft, or order, or any indorsement thereof, or upon a promissory note placed upon the footing of a bill of exchange . . . shall be commenced within five years next after the cause of action accrued." What are "promissory notes placed upon the footing of a bill of exchange" is settled by another section of the statute as follows:

" Promissory notes, payable to any person or persons, or to a corporation, and payable and negotiable at any bank incorporated under any law of this Commonwealth, or organized in this Commonwealth under any law of the United States, which

shall be indorsed to, and discounted by, the bank at which the same is payable, or by any other of the banks in this Common-wealth as above specified, shall be, and they are hereby, placed on the same footing as foreign bills of exchange." The statute of Anne, making promissory notes negotiable, is not in force in Kentucky, and promissory notes not answering to the requirements contained in the statute just quoted are, in Kentucky, assignable, but not negotiable. Thus the note in suit was negotiable paper in Louisiana, but not in Kentucky. *Hyatt* v. *Bank of Kentucky*, 8 Bush, 193; and in a suit upon it in Kentucky the statute of limitations of that State, as the *lex fori*, governs it. *Bank of the United States* v. *Donnally*, 8 Pet. 361; *Alliance Bank of Simla* v. *Carey*, L. R. 5 C. P. D. 429; *Steele* v. *Curle*, 4 Dana, 381. By the law of limitation in force there it was provided that an action on a written contract may be brought at any time within fifteen years after the cause of action accrued. This suit was brought within that time.

The fifth error assigned is that the court erred in sustaining the demurrer to the fifth paragraph of the answer. The action of the court was right, however, for several reasons. If the facts pleaded in this paragraph constituted a defence to any one it was to the executor alone; but they were pleaded by all of the defendants together, who also took a joint exception to the overruling of the demurrer. The answer being pleaded by all of the defendants, and confessedly constituting no defence for four of them, was clearly demurrable. If defendants join in an answer which on demurrer proves to be insufficient as to one, it will be adjudged bad as to all. 1 Saund. 28, n. 2; *Hedges* v. *Chapman*, 2 Bing. 523; *Moors* v. *Parker*, 3 Mass. 310, 312; *Morton* v. *Morton*, 10 Iowa, 58; *Schermerhorn* v. *Tripp*, 2 Caines Cas. 108; *Marsh* v. *Smith*, 18 N. H. 366. And further, the facts as pleaded would not have been a defence to the executor, if set up by him alone. See Kentucky Code, § 430. And in any event this statute cannot deprive plaintiff of her right to have her case tried in a Federal court before a jury. *Suydam* v. *Broadnax*, 14 Pet. 67; *Baldwin* v. *Hale*, 1 Wall. 223; *Green* v. *Creighton*, 23 How. 90; *Hyde* v. *Stone*, 20 How. 170; *Union Bank* v. *Jolly*, 18 How. 503.

The seventh assignment of error relates to the local law of Louisiana relating to prescription, and to the effect of the payments on the notes.

There was a debt due the defendant in error by Wm. Henderson, Jno. G. Gaines and S. Z. Relf. All three were bound to her. The two last subsequently formed a partnership, and by agreement with the first named (Henderson) assumed the obligation in the new partnership name of Gaines & Relf. These two thereby became bound to Henderson to see this debt paid to Mrs. Wadsworth. But as to defendant in error, by this assumption, there was neither the substitution of a new debtor for the old debtors, nor of a new debt for the old debt.

Had she expressly declared that, in accepting the assumption of the debt by the new firm she intended to discharge Henderson from all liability to her, she would simply have, through an act of grace, released one of three debtors without obtaining a new or substituted debtor in his place; for in such case only John G. Gaines and S. Z. Relf would have been her debtors, and they were already bound to her under the orignal contract.

"Novation is a contract, consisting of two stipulations, one to extinguish an existing obligation, the other to substitute a new one in its place." Code, 2185 (2181). "Novation takes place in three ways: . . . 2d. When a new debtor is substituted to the old one." . . . Code, 2189 (2185). "The pre-existent obligation must be extinguished, otherwise there is no novation. If it be only modified in some parts, and any stipulation of the original obligation be suffered to remain, it is no novation." Code, 2187 (2183). *Baker* v. *Frellsen*, 32 La. Ann. 822, 826. "Novation . . . is not presumed. The intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt." Code, 2190 (2186); 13 La. Ann. 238. The obligation by which a debtor gives to the creditor another debtor, who obliges himself toward such creditor, does not operate a novation, unless the creditor has expressly declared that he intends to discharge his debtor who has made the delegation. Code, 2192 (2187).

*Choppin* v. *Gobbold,* 13 La. Ann. 238; *Jackson* v. *Williams,* 11 La. Ann. 93; *Jacobs* v. *Calderwood,* 4 La. Ann. 509.

Hence, no novation having taken place, the heirs of Henderson, by the fact alone of the simple acceptance of the succession, contracted the obligation to discharge all the debts of Wm. Henderson, including the note sued on, no matter what their amount and though they far exceed the effects composing it. And they became thereby bound to pay the note in suit out of their own property, as if they had themselves signed the note at the time of its execution, or as if they were Henderson himself. The heir represents the person of the deceased; he is of full right in his place, as well for his rights as his obligations. The liability was *in solido* with the other parties bound *in solido* with the ancestor Henderson; but they did not become debtors *in solido* with each other. It follows, as "a suit in Louisiana against one of the debtors *in solido* interrupts prescription with regard to all," that if the prescription was interrupted by citation on Gaines, or by citation on Relf, or by an acknowledgment of the debt by Gaines or by Relf, it was interrupted as to all the obligors *in solido.* There is nothing in the position taken on the other side that the firm of Gaines & Relf was a legal entity distinct from the individuals composing it, and that payments made by this firm, a third person, would not interrupt prescription. *Cuculler* v. *Hernandez,* 103 U. S. 105.

The counsel also argued the question of jurisdiction involved in the motions to dismiss those suits which did not involve an amount exceeding $5,000.

MR. JUSTICE WOODS delivered the opinion of the court. After stating the facts in the language above reported, he continued:

We think the motion to dismiss the writs of error must prevail.

The obligation upon which the suit against the heirs of William Henderson was founded was based, not on the note made by him, but upon the fact that they had, without inventory, taken possession of the property of the succession,

and had thereby subjected themselves each to pay his proportionate share of the debts of the succession.

This is evident from the following articles of the Revised Civil Code of Louisiana of 1870:

"Art. 1422. The personal action which the creditors of a succession can exercise against the heirs has for its basis the obligation which the heirs are under to discharge the debts of the deceased. This action, is modified according as the deceased has left one or several heirs.

"Art. 1423. The heirs, by the fact alone of the simple acceptance of a succession left them, contract the obligation to discharge all the debts of such succession, to whatever sum they may amount, though they far exceed the value of the effects composing it. The only exception to this rule is when the heirs, before meddling with the succession, have caused a true and faithful inventory thereof to be made; . . . for in this case they are only bound for the debts to the value of the effects found in the succession."

"Art. 1425. But though the heirs and other universal successors who have not made an inventory as is before prescribed are bound for the payment of all the debts of the succession to which they are called, even when the debts exceed the value of the property left them, they are not bound *in solido*, and one for the other, for the payment of the debts."

"Art. 1427. If, on the contrary, the deceased has left two or more heirs, they are bound to contribute to the payment of those debts only in proportion to the part which each has in the succession. Thus the creditors of the succession must divide among the heirs the personal action which they have against them, and cannot sue one for the portion of the other, or one for the whole debt."

It is plain, from these provisions of the Civil Code, that the suit was brought to enforce against each of the plaintiffs in error a separate and distinct liability, which sprang from the acceptance of the succession of their ancestor, and that no joint judgment could be rendered against them. The petition was framed on this theory, and separate judgments were accordingly rendered against each of the plaintiffs in error. The

note of Henderson & Gaines was introduced merely to prove the debt of the succession of Henderson.

The judgments against the four plaintiffs in error, whose writs of error we are asked to dismiss, are all less than the amount which authorizes a writ of error to this court. We have, therefore, no jurisdiction. For it is the settled rule that where a judgment or decree against a defendant, who pleads no counter-claim or set-off, and asks no affirmative relief, is brought by him to this court by writ of error or appeal, the amount in dispute on which the jurisdiction depends is the amount of the judgment or decree which is sought to be reversed. *Gordon* v. *Ogden*, 3 Pet. 33; *Oliver* v. *Alexander*, 6 Pet. 143; *Knapp* v. *Banks*, 2 How. 73; *Rich* v. *Lambert*, 12 How. 347; *Walker* v. *United States*, 4 Wall. 163; *Merrill* v. *Petty*, 16 Wall. 338; *Troy* v. *Evans*, 97 U. S. 1; *Hilton* v. *Dickinson*, 108 U. S. 165; *Bradstreet Co.* v. *Higgins*, 112 U. S. 227; *First National Bank of Omaha* v. *Redick*, 110 U. S. 224.

It is also settled that neither co-defendants nor co-plaintiffs can unite their separate and distinct interests for the purpose of making up the amount necessary to give this court jurisdiction upon writ of error or appeal. *Rich* v. *Lambert, ubi supra; Seaver* v. *Bigelows,* 5 Wall. 208; *Paving Co.* v. *Milford*, 100 U. S. 147; *Russell* v. *Stansell*, 105 U. S. 303; *Ex parte Baltimore & Ohio Railroad Co.*, 106 U. S. 5; *Farmer's Loan & Trust Co.* v. *Waterman*, 106 U. S. 265; *Adams* v. *Crittenden*, 106 U. S. 576; *Hawley* v. *Fairbanks*, 108 U. S. 543; *New Jersey Zinc Co.* v. *Trotter*, 108 U. S. 564; *Tupper* v. *Wise*, 110 U. S. 398; *Fourth National Bank* v. *Stout*, 113 U. S. 684. The cases cited are conclusive of the question of jurisdiction. The authorities, mentioned in the note,* on which the plaintiffs in error rely, were discussed by the Chief Justice in *Ex parte Baltimore & Ohio Railroad Co., ubi supra,* and were shown to have no application to cases like the present. The case of *Davies* v. *Corbin*, 112 U. S. 36, also cited for the plaintiffs in error, clearly belongs to the same class. The motions to dismiss for want of jurisdiction are, therefore, sustained.

---

*\*Shields* v. *Thomas,* 17 How. 3; *Market Company* v. *Hoffman*, 101 U. S. 112; *The Connemara*, 103 U. S. 754; *The Mamie*, 105 U. S. 773.

It remains to consider, upon the merits, the writ of error of William H. Henderson, as executor of the last will of Eleanor Ann Henderson.

The plaintiff in error in this case relied for his defence upon Article 3540 of the Civil Code of Louisiana, which reads as follows: "Actions on bills of exchange, notes payable to order or bearer, except bank notes, those on all effects negotiable or transferable by indorsement or delivery, and those on all promissory notes, whether negotiable or otherwise, are prescribed by five years, reckoning from the day when the engagements were payable."

It was ruled by the Circuit Court that the prescription established by this article of the Code of Louisiana was by the law of Kentucky made the limitation in this case, and this was not disputed by counsel for the defendant in error. General Statutes of Kentucky, 1872, ch. 71, art. 4, § 19.

The suit against the executor of Mrs. Henderson was not brought until nearly fifteen years after the maturity of the note of Henderson & Gaines, and nearly twelve years after the death of William Henderson ; the obligation on which the suit was based was, therefore, prescribed as against the executor of Mrs. Henderson's will, unless the prescription had been interrupted. But the defendant in error insisted, as already stated, that the prescription had been interrupted by acknowledgments of the debt made by the firm of Gaines & Relf, with which, as she claimed, William Henderson was bound *in solido* for the payment of the note of Henderson & Gaines. To prove these acknowledgments she introduced evidence tending to show payments made by Gaines & Relf, after the death of William Henderson, of interest on the note. The contention of the defendant in error was, that these acknowledgments were made competent to show an interruption of prescription, as against the present plaintiff in error, by article 3552 of the Civil Code of Louisiana, which provides as follows:

"A citation served upon one debtor *in solido*, or his acknowledgment of the debt, interrupts the prescription with regard to all the others, and even their heirs."

It is plain that, to make this article applicable to the case of

the plaintiff in error, it must be shown that Mrs. Henderson, his testatrix, was bound *in solido* with Gaines & Relf to pay the debt evidenced by the note of Henderson & Gaines, or that she was the heir of her husband, William Henderson, who, at the time of his death, was bound *in solido* with Gaines and Relf, lately his partners. Counsel for the defendant in error concede, as well they may, that Mrs. Henderson did not become bound for the debt as the heir of her husband, William Henderson. Her liability was that of widow in community, and it was so averred in the petition filed in this case in the Circuit Court.

The only question for decision is, therefore, was Mrs. Henderson, as the widow of William Henderson, bound *in solido* with Gaines & Relf, by whom the alleged acknowledgments were made, for the payment of the note of Henderson & Gaines? This question must be settled by the law of Louisiana. If it shall turn out that Mrs. Henderson was not bound *in solido* with Gaines & Relf, then the prescription as to her was not interrupted by any acknowledgments made by Gaines & Relf, and such acknowledgments were improperly admitted in evidence against her.

The articles of the Code bearing upon this question are as follows:

"ART. 2093. An obligation *in solido* is not presumed, it must be expressly stipulated. This rule ceases to prevail only in cases where an obligation *in solido* takes place of right, by virtue of some provision of the law."

Such a provision is found in article 2872, which declares that "commercial partners are bound *in solido* for the debts of the partnership."

"ART. 2082. When several persons obligate themselves to the obligee by the terms *in solido*, or use any other expressions which clearly show that they intend that each one shall be separately bound to perform the whole of the obligation, it is called an obligation *in solido* on the part of the obligors."

"ART. 2091. There is an obligation *in solido* on the part of the debtors when they are all obliged to the same thing, so that each may be compelled for the whole, and when the pay-

ment which is made by one of them exonerates the others towards the creditor.

"ART. 2092. The obligation may be *in solido*, although one of the debtors be obliged differently from the other to the payment of one and the same thing; for instance, if the one be but conditionally bound, while the engagement of the other is pure and simple, or if the one is allowed a term which is not granted to the other."

These articles make it clear that it is an indispensable requisite to the obligation of debtors *in solido* that they should be bound to perform the same obligation and the whole of it. Applying this test it is evident that Mrs. Henderson was not bound *in solido* with Gaines & Relf for the debt evidenced by the note of Henderson & Gaines.

The liability of Mrs. Henderson was based upon and was coextensive with her obligation as a member of the partnership or community between herself and her husband to pay the debts of the community. What this obligation is, is shown by the following articles of the Civil Code:

"ART. 2405. At the time of the dissolution of the marriage all effects which both husband and wife reciprocally possess are presumed common effects or gains, unless it be satisfactorily proved which of such effects they brought in marriage, or which have been given them separately, or which they have respectively inherited.

"ART. 2406. The effects which compose the partnership or community of gains are divided into two equal portions between the husband and the wife, or between their heirs at the dissolution of the marriage."

"ART. 2409. It is understood that in the partition of the effects of the partnership or community of gains, both husband and wife are to be equally liable for their share of the debts contracted during the marriage, and not acquitted at the time of its dissolution.

"ART. 2410. Both the wife and her heirs or assigns have the privilege of being able to exonerate themselves from the debts contracted during the marriage, by renouncing the partnership or community of gains."

From these provisions of the Code it is evident that if the widow, upon the dissolution of the community by. the death of her husband, fails to renounce the community of gains, which, as the law stood at the time of the death of William Henderson, was equivalent to an acceptance of the community, she became personally bound to pay one-half of the debts of the community, but no more.   She is not, therefore, bound *in solido* for the payment of the debts of the community, unless the contract upon which her coligation is based expressly so stipulates. This will be clear from the following authorities :

Pothier, in his treatise on Obligations, paragraph 261 [Evans' Translation, London, 1806, 145], says: " An obligation is contracted *in solido* on the part of the debtors when each of them is obliged for the whole, but so that a payment by one liberates them all."

The same author, in his work "De la Communauté " [7 Pothier, Paris, 1861], paragraph 729, speaking of the husband's obligations on behalf of the community, says : " There is no difficulty when the husband has contracted alone.  But would it be the same if he was obligated jointly with his wife, without any expression of solidarity ?  Would he, in this case, be debtor for the whole, as regards the creditor, after the dissolution of the community ?  The cause of the doubt is, that if he was obligated jointly with any other person than his wife, without expression of solidarity, he would be considered as having bound himself only for his own proportion.  Nevertheless, it is commonly held that even when the husband has bound himself jointly with his wife, without expression of solidarity, he is obligated for the whole, and remains, after dissolution of the community, debtor for the whole as regards the creditor.  The reason is, that when a wife becomes a party to the obligation of her husband the intention of the parties is to obtain greater security to the creditor rather than to divide and diminish the liability of the husband." [Page 368.]

But, with regard to the obligation of the wife, he says, in paragraph 731 : " The wife, after the dissolution of the community, whether she has accepted the community or renounced it, continues to be debtor for the whole amount (as respects the

creditors) of the debts of the community which proceed from her act—that is to say, those which she herself has contracted, whether before or after the marriage, and those of successions which have fallen to her." [Page 369.]

He then adds :

" Par. 732. When the wife, during the marriage, has not contracted alone, but jointly with her husband, without expression of solidarity, though the husband be regarded as bound for the whole, the wife is not considered as being bound for anything but the half, and is only debtor as regards the creditors for half. [Page 370.]

" Par. 733. In regard to all other debts of the community which the wife has not herself contracted, and for which she is only bound in her character of member of the community, the wife, after the dissolution of the community which she has accepted, is only debtor for a moiety as towards the creditors." [Ib.]

So, in his Coutumes D'Orléans, Introduction to Title 10, the same author says ;

" Par. 136. The husband is held *in solido* towards the creditor, not only when he has contracted alone, but even when he has bound himself with his wife without expression of solidarity, although it would be otherwise if he had so bound himself with another person." [1 Ib. 253.]

" Par. 138. The wife is held *in solido* towards the creditors for debts of the community which proceed from her act, that is to say, for those which she has herself contracted before the marriage, and for those which grow out of successions which have fallen to her. She is also held *in solido* for debts contracted by her husband when she has bound herself *in solido* with him. If she has bound herself for his debts, without solidarity having been expressed, she is held even towards the creditor only for half." [Ib. 254.]

See also Touillier's Commentary on the Code Napoléon, t. 13, pp. 310, 313 ; Duranton, t. 6, 296, par. 197, t. X., French ed., and t. 8, 222, par. 491, t. XIV., French ed. ; Zachariæ, t. 3, pp. 503, 504, sec. 520, art. 1, par. 2.

In accord with these views of the text-writers, the Supreme

Court of Louisiana, in the case of *Saulet* v. *Trepagnier*, 11 Rob. 266, said: "The obligation which the widow incurs by her acceptance of the community is an additional security for the creditors; but they have the right to look to the heirs and direct representatives of the husband for the whole debt, because it is with him they treated, and it is he whom they trusted. *Ejus solius fidem secuti sunt*, says Touillier, vol. 13, No. 233, 2 Pothier Traité de la Communauté, No. 719. But, although the creditors have this option, the widow who has accepted the conjugal partnership or community becomes absolutely and personally bound to them for one-half its debts."

In the present case the debt which is sought to be enforced against the estate of Mrs. Henderson is not one which she contracted herself before the marriage, nor did it grow out of successions which had fallen to her, nor did she bind herself *in solido* therefor with her husband, nor did the husband in contracting the debt use any words which bound his wife solidarily with him, if in his power to do so. It is, therefore, clear, upon the authorities cited, that she was not bound *in solido* with her husband, during the community, or after its dissolution, with his succession, for the debt evidenced by the note of Henderson & Gaines. In fact, the petition filed in this case, and the judgments rendered by the Circuit Court, are based on this view. She was, therefore, not bound *in solido* with Gaines and Relf, the co-debtors of her husband. The payments made on the note by them after the death of her husband should not, therefore, have been admitted in evidence to interrupt the prescription of five years, which began to run in her favor upon his death.

The only authority not already noticed to which we have been referred by counsel for defendant in error, to show that Mrs. Henderson was bound *in solido* with Gaines and Relf for the debt of Henderson & Gaines, is the case of *Edwards* v. *Ricks*, 30 La. Ann. 924, 928. In explanation of this case it may be stated that in Louisiana the succession of a deceased wrongdoer is liable for the actual damage resulting from his torts. Art. 25, Code of Practice. The suit was brought by Edwards to recover damages for a trespass upon his property

and an assault on his family, committed by Ricks and one
Vernado. Before suit brought Vernado had died, and the
action was against Ricks and the widow and the two children
and heirs of Vernado, who, it was alleged, had taken posses-
sion of his property without inventory, and were, therefore,
liable for the obligations of the deceased trespasser. The
judgment of the lower court was against Ricks for $5,000, and
against the widow of Vernado for $2,500, and against his two
heirs for $1,250 each, "the judgment," as the report states,
" being *in solido*."

Upon appeal the Supreme Court of Louisiana decided that,
while Ricks might be held for exemplary damages, the widow
as well as the heirs of Vernado were liable only for the actual
damages, and accordingly affirmed the judgment against Ricks
for $5,000, which included exemplary damages, and rendered
judgment for the actual damages "against the widow and heirs
of Vernado in the sum of three hundred dollars (*in solido* with
the judgment against Ricks); said three hundred dollars to be
paid" one-half by the widow, and one-half by the two heirs
jointly. In delivering its opinion the court said: " Ricks and
the estate of Vernado, represented by the widow and heirs,
are sued as co-trespassers and solidary obligors. To the extent
that the estate of Vernado is liable, the judgment against it
would be solidary with that against Ricks, but would divide
itself as follows: one-half against the widow, and one-half
against the two heirs jointly."

It is to be observed that the case did not involve a construc-
tion of article 3552 of the Civil Code, which we now have
under consideration, and is not authority to support the con-
tention of the defendant in error that a payment by Gaines &
Relf interrupted the prescription in favor of Mrs. Wadsworth.
And whatever the court may have said about the estate of
Vernado being liable *in solido* with Ricks was merely *obiter*,
for no judgment was asked or rendered against the estate, and
it is clear that under articles 1425 and 1427, heretofore cited,
the obligation resting upon Ricks and the widow and heirs of
Vernado was not a solidary obligation; and the court did not
treat it as such, for it rendered a separate judgment against

Ricks for one amount, a joint judgment against the two heirs of Vernado for a different amount, and a third judgment against the widow for still another amount, and the judgment against Ricks was made up of $4,700 exemplary damages, and $300 actual damages; while the judgments against the widow and heirs were only for the actual damages.

It seems plain, therefore, that the court, by calling the obligation and the judgments solidary, merely meant that a payment made by one of the judgment debtors would *pro tanto* exonerate the others towards the creditor. But this quality, as we have shown, is not the only one necessary to an obligation *in solido* as defined by the Civil Code. The debtors must be "all obliged to the same thing, so that each may be compelled for the whole." These parties were not under the same obligation, either in character or amount, and were not all bound for the whole.

Nor do we think it is a reasonable construction of article 3552 of the Civil Code to hold that when two persons are jointly bound, one for the entire debt and one for only a part of it, the acknowledgment of the latter interrupts the prescription as to the former.

Therefore, as the Circuit Court admitted incompetent evidence upon a vital point of the case against the executor of Mrs. Henderson, and, when requested by him, refused, by its charge to the jury, to counteract the effect of the evidence thus admitted, the error is fatal to the judgment in favor of the defendant in error against the executor of Eleanor Ann Henderson.

*The judgment against William H. Henderson, Executor, is reversed, and the cause remanded to the Circuit Court, with directions to grant a new trial; and the motions to dismiss the writs of error in the cases of Howard L. Henderson, William H. Henderson, Warren N. Henderson, and Victorine S. and M. C. McCarthy are granted.*