Freda **TINSLEY, Wife of/and Jack L. Tinsley, Plaintiffs–Appellants,**

v.

**PACKARD TRUCK LINES, INC. and Insurance Company of the State of Pennsylvania, Defendants–Appellees.**

**No. 87–3797.**

United States Court of Appeals, Fifth Circuit.

June 8, 1988.

Harold J. Lamy, Barker, Boudreaux, Lamy & Foley, New Orleans, La., for plaintiffs-appellants.

William E. Wynne, New Orleans, La., for defendants-appellees.

Before BROWN, KING, and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Freda and Jack Tinsley and their son John are Texas residents. On January 19, 1985, Freda Tinsley was badly injured when an automobile in which she was a passenger—driven by her son, John Tinsley—collided with a tractor-trailer truck in Louisiana. Mr. and Mrs. Tinsley executed in Texas a settlement with John's insurer, Southern Farm Bureau Casualty Insurance Company (Southern), for $50,000, growing out of John's insurance policy contract made in Texas. The release the Tinsleys signed referred specifically to Southern, and also contained general language which on its face purported to discharge all entities on all possible claims arising from the accident.[1]

Based on diversity jurisdiction, the Tinsleys subsequently filed suit in the Louisiana Federal District Court against (i) the operator of the truck, Packard Truck Lines (Packard), (ii) its insurer, Insurance Company of the State of Pennsylvania, and (iii) other defendants as to whom the suit has been dismissed. The court granted summary judgment for both defendants, finding that under *Migliore v. Traina*, 474 So.2d 980 (La.App. 5 Cir.1985), the general language of the Texas release operated to release Packard and its insurer. From that judgment, the Tinsleys appeal.

We do not reach the question of whether the District Court properly decided to apply Louisiana law, because we decide that whether Louisiana law or Texas law is applied, the same result obtains: the release discharged *only* the parties specifically mentioned in it. We reverse.

### Texas' Conclusion Reached Directly

Under Texas law, it is clear that the mere naming of a general class of tortfeasors in a release does *not* discharge the liability of each member of that class unless the release refers to such released tortfeasor *by name* or with *such descriptive particularity* that his identity or his connection with the tortious event is not in doubt. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419–20 (Tex.1984).[2]

Louisiana law on this point is less clear, and a slightly more protracted analysis is necessary.

### Our Louisiana Conclusion Takes Some Diversions

Louisiana Civil Code Article 2203 formerly provided:

> the [19th (handwritten)] day of [Jan. (handwritten)] 19[85 (handwritten)] by reason of [auto accident (handwritten).]
> (emphasis added).

---

1. That portion of the Tinsley release said:
   For the sole consideration of [$50,000 (handwritten)] ... paid in hand by [John Tinsley, Jack Tinsley, and Southern Farm Bureau Casualty (handwritten)], hereinafter called payors, the receipt of which is hereby acknowledged, we [Freda and Jack Tinsley (handwritten)] ... do hereby release, acquit and forever discharge the said payors, their agents and employees, and *all other persons, firms or corporations who are or might be liable,* from any and all actions ...—resulting or to result from an accident that occurred on or about

2. The release at issue in *Duncan* named one tortfeasor, and contained additional general language releasing "any other corporations or persons whomsoever responsible" for the accident in question. The release which the Tinsleys signed contained quite similar language. *See* n. 1, *supra.*

The remission or conventional discharge in favor of one of the codebtors *in solido*,[3] discharges all the others, unless the creditor has expressly reserved his right against the latter. In the latter case, he can not claim the debt without making a deduction of the part of him to whom he has made the remission.

The rule of Article 2203 was roundly criticized[4] prior to its repeal effective January 1, 1985.[5] On that date, Article 2203 was replaced by new Article 1803, which provides:

Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor.

Surrender to one solidary obligor of the instrument evidencing the obligation gives rise to a *presumption* that the remission of debt was intended for the benefit of all the solidary obligors.

(emphasis added).

In *Carona v. State Farm Ins. Co.*, 458 So.2d 1275 (La.1984)—at a time when the act repealing Article 2203 and replacing it with Article 1803 had been passed but had not yet taken effect—the Louisiana Supreme Court faced the question of whether a personal injury claimant who settles with an uninsured/underinsured tortfeasor releases his rights against his own insurer—whose policy includes uninsured/underinsured motorist coverage—if he fails to reserve those rights expressly. The Supreme Court emphatically concluded that "[t]he comments to the new article confirm that the express reservation requirement has been rejected. 1984 La.Acts, No. 331, S 1, art. 1803, Comment (e)." *Carona* at 1278. The Court then went on to emphasize that "[n]ew Article 1803 does not apply to the present cases which arose before its effective date. The reasons for the change in the law are relevant, however, to our deter-

mination that Article 2203 is incompatible with the aim of the uninsured motorist insurance statute." *Id.* The Court, reasoning that "Article 2203 conflicts with and has been superseded by La.R.S. 1406(D)(4), of the [uninsured/underinsured motorist] statute" concluded on the basis of that latter provision that "a victim merely by his release of the tortfeasor does not forfeit any right against his [uninsured/underinsured motorist] carrier." *Carona* at 1278 and 1279.

The following year, in *Migliore v. Traina*, 474 So.2d 980 (La.App. 5 Cir.1985), the Court of Appeal for the Fifth Circuit dealt with another uninsured/underinsured motorist coverage case arising before the effective date of Article 1803. The court distinguished *Carona* from the case before it, stating:

The general and long-settled rule is that it will not be presumed that plaintiffs intended to waive their rights against other parties possibly liable unless it clearly appears that they intended to do so. *Honeycutt v. Town of Boyce*, 341 So.2d 327 (La.1976), and the cases cited therein.... Thus, the question before us is not whether Migliore's failure to reserve specifically her rights against [Sentry, her uninsured/underinsured motorist] carrier released Sentry, but rather whether the language contained in the release clearly evinced an intention to release Sentry. We conclude that it did. The language [of the release] is so broad it clearly covers any liability of any persons whatsoever arising from the accident.

*Migliore* at 983.

### Migliore No Obstacle

*Migliore* was analyzed and distinguished by the very same Court of Appeal two years later in yet another uninsured/underinsured motorist coverage case arising before the effective date of Article 1803, in

---

3. "In the civil law, for the whole; as a whole. An obligation *in solido* is one where each of the several obligors is liable for the whole; that is, it is joint and several. *Henderson v. Wadsworth*, 115 U.S. 264, 6 S.Ct. 140, 29 L.Ed. 377." Black's Law Dictionary 716 (5th Ed.1979).

4. *Carona v. State Farm Ins. Co.*, 458 So.2d 1275, 1277 (La.1984).

5. 1984 La.Acts, No. 331.

*Cates v. Wausau Ins. Co.,* 508 So.2d 1031 (La.App. 5 Cir.1987):

> [O]n the facts before the [*Migliore*] court, it was convinced of the plaintiff's intent to waive her rights. In the case before us the format of the release differed from that in *Migliore* in that the names of specific defendants were typed onto the printed form; we may not presume intent to release all possible defendants.

*Cates* at 1032–33. The court then held that summary judgment in favor of defendant Wausau Insurance Company was inappropriate, since Wausau was not specifically named in the release.

### Cates Points the Way

The instant case arises from an occurrence *after* Article 2203 was supplanted by Article 1803. Under Article 1803 there is only a *presumption* that general language in a release is intended to release parties not specifically named in the release. And under *Cates*, that presumption is fully rebutted where the names of specific parties are typed or handwritten on a printed form. Here the release that Freda and Jack Tinsley signed was just such a printed form, and the specific potential defendants whose names were entered on that form were John Tinsley, Jack Tinsley, and Southern. Exercising our *Erie* role we are confident the Supreme Court of Louisiana would determine that *Cates*, not *Migliore*, controls this case.[6] The Court's words in *Carona* that "the comments to the new article confirm that the express reservation requirement has been rejected" make it both unnecessary and undesirable to impose on the Supreme Court the travail of a formal certification under the Court's Rule XII.

The release the Tinsleys signed did not serve to release Packard, its insurer, or anyone else other than those specifically named: John Tinsley, Jack Tinsley, and Southern. The court erred in granting summary judgment for Packard and its insurer on the basis of *Migliore*. The case must be reversed.[7]

REVERSED.

---

6. *Migliore* has drawn some of the criticism formerly leveled at Article 2203, and the correctness of the decision has been questioned. *See Chatman v. Mid America Indemnity Company,* 479 So.2d 677, 679 n. 2 (La.App. 3 Cir.1985). While this has made the choice of *Cates* easier, we do not decide this case on that basis, since we leave the resolution of that precise question where it belongs: with the Louisiana courts.

7. Obviously it is also remanded for trial or such other proceedings as are consistent with this opinion.