Phillip DAVIS, Jr., and Betty Ann Davis, Plaintiffs–Appellants,

v.

HUSKIPOWER OUTDOOR EQUIPMENT CORPORATION, Defendant–Appellee.

No. 91–4049
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 19, 1991.
Rehearing Denied Aug. 21, 1991.

John L. Hammons, Nelson, Hammons & White, Shreveport, La., for plaintiffs-appellants.

Albert M. Hand, Jr., Cook, Yancey, King & Galloway, Shreveport, La., for defendant-appellee.

Before KING, GARWOOD, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge.

A man injured in a chain-saw accident sued the distributor of the saw, claiming that a broad release he signed in an earlier state action did not release this defendant from liability. His wife, who had not participated in the earlier suit, joined as a plaintiff in this suit, claiming damages for loss of consortium. The district court dismissed the case with prejudice. We affirm the dismissal of the husband's claims but reverse and remand the dismissal of the wife's loss-of-consortium claim.

In 1986 Phillip Davis, Jr. sued three businesses in Louisiana state court for injuries he sustained eleven months earlier when a chain saw that he was using exploded. The original defendants were: (1) Husqvarna Motor, the alleged manufacturer of the saw, (2) Boswork Distributing Company, the alleged distributor of the saw, and (3) McKinney Saw & Cycle, Inc., the alleged retailer from whom the saw was purchased.

In its answer to Davis's petition, McKinney alleged that it had acquired the saw directly from Boswork. McKinney also alleged that the saw arrived new—free from any defects in design or manufacture and free from any modifications. During discovery, however, Davis learned that after the manufacturing process was complete, someone had punched a hole in the vent valve on the gas tank.

Before trial, Davis entered into a settlement agreement with two of the defendants, Husqvarna and Boswork. The agreement specifically releases these two defendants and two other companies that were not parties in the suit. The agreement also contains an omnibus clause that broadly releases all other persons and companies from any potential liability, except as expressly reserved.[1] Finally, the agreement reserves all rights against McKinney.

The agreement also contains the following paragraph, the effect of which is a pivotal issue in this appeal:

It is understood and agreed that this is nothing more than a compromise agreement, that it is in no respect an admission of liability on the part of Defendants, and that the purpose of this compromise and release is to definitely and finally dispose of all responsibility and all possible liability now existing or that may hereafter arise against Defendants.

"Defendants" is defined elsewhere in the agreement to include the two named defendants and the other two specifically named companies that were not parties to the suit.[2]

Sometime before trial, Davis discovered that McKinney had acquired the saw not

---

1. The settlement contains this broad release:
... Phillip Davis, Jr. ... in consideration of the sum of [$4,000] does hereby release, acquit, and discharge Husqvarna Motor, Boswork Distributing Company, Electrolux Motor AB, and Husqvarna Power Products Company, hereinafter referred to as "Defendants," as well as their respective agents, employees, servants, officers, directors, insurers, divisions, subsidiaries, stockholders, assigns, successors, and all other persons, firms, or corporations liable or claimed to be liable (except as otherwise expressly reserved) of any liability ... from any and all claims, demands, actions, and causes of action, whatsoever their nature might be, that have arisen or that might arise hereafter in favor of [Davis] as a result of that certain accident on or about March 5, 1985, when, according to plaintiff's petition, a chain saw manufactured by Husqvarna caught fire.

2. See supra note 1.

from Boswork, but from Huskipower Outdoor Equipment Corporation. Davis also learned that Ed Barris, the general manager of Huskipower, had intentionally punched the hole in the vent valve of the saw. Davis took no action to amend his pleadings, however, and trial proceeded against McKinney as the sole defendant.

A jury found that Davis had suffered almost $300,000 in damages, for which McKinney was 20 percent at fault and the released Husqvarna was 80 percent at fault. The trial judge therefore awarded Davis about $58,000, which constituted 20 percent of the total amount of damages plus legal interest and costs. The state appellate court, however, concluded that McKinney was 100 percent at fault, reduced the total amount of damages slightly, to about $280,000, and ordered McKinney to pay all damages.

Next, Davis sued Huskipower in Louisiana state court. In that action, almost four years after the accident, Davis's wife appeared as a plaintiff for the first time, seeking damages for loss of consortium. On grounds of diversity, Huskipower removed the case to federal court.

Based on Davis's release of all parties other than McKinney in the settlement of the prior state-court action, the magistrate issued a report recommending dismissal of the suit with prejudice. While the case was pending, McKinney brought suit in Louisiana state court, seeking contribution from Huskipower on the earlier verdict of about $280,000 against McKinney.

In federal district court, Davis then filed a motion for voluntary dismissal without prejudice pursuant to Rule 41(a)(2). The federal court, acting on the magistrate's recommendation, dismissed with prejudice the Davises' suit against Huskipower.

The Davises now appeal, arguing first that the district court erred in broadly interpreting the release signed in state court to discharge Huskipower from liability. They also allege that even if Mr. Davis released his claims against Huskipower, Mrs. Davis did not release her claims because she did not sign the release. Finally, the Davises contend that the district court erred in dismissing their case with prejudice instead of granting their motion for voluntary dismissal without prejudice.

## The Effect of the Release

The Davises contend that the district judge erred in interpreting the release to discharge the liability of Huskipower, a company that was not a party to the suit in state court. Specifically, they argue that although one part of the release purports to discharge all other persons and companies, another part of the release says that the purpose of the settlement is to dispose of all liability against the *defendants*, a term defined to include only four specific companies.

The Davises claim that the court should have interpreted the agreement to apply only to the defendants and their subsidiaries. In the alternative, they argue that, at a minimum, the court should have found the agreement ambiguous and thus allowed the admission of extrinsic evidence as proof of the parties' intent. Either of these decisions by the district court would have precluded its dismissal of the case with prejudice.

The enforceability of a settlement agreement is governed by the law of the forum state. *Florida Educ. Ass'n, Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir.1973); *Lee v. Hunt*, 483 F.Supp. 826, 834 (W.D.La. 1979), *aff'd*, 631 F.2d 1171 (5th Cir.1980). In Louisiana, as elsewhere, a settlement agreement is an enforceable contract to which a court must give legal effect according to the parties' intent as expressed in the document. *See Saucier v. John–Clai Co.*, 408 So.2d 27, 29 (La.Ct.App.1981).

"When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. The aim of contract interpretation is the discernment of a compatible meaning to all provisions of an agreement." *Investors Assocs. Ltd. v. B.F. Trappey's Sons Inc.*, 500 So.2d 909, 912 (La.Ct.App.) (citations omitted), *cert. denied*, 502 So.2d 116 (La. 1987). Guided by this common-sense approach to contract interpretation, we dis-

cern a compatible meaning to all provisions in the release.

The first paragraph releases not only the defendants, their agents, and their subsidiaries, but also "all other persons, firms, or corporations liable or claimed to be liable" from all claims arising from the chain-saw accident. The second paragraph articulates the purpose of the release: to dispose of all possible liability of the defendants.

These two provisions are compatible; the agreement achieves its stated purpose—to dispose of all possible liability of the defendants—by effectively putting an end to *all* litigation arising from the accident. Unless Davis released all possible defendants, the settlement agreement would abysmally fail to protect the named parties from liability. Davis could later sue an unnamed party—like Huskipower—and the unnamed party could then drag all the named parties back into the suit.

In addition, we believe that Louisiana law supports this interpretation of the release. This Court has recently considered Louisiana law on the effect of broadly drafted releases. *See Tinsley v. Packard Truck Lines, Inc.*, 846 F.2d 334 (5th Cir. 1988). In *Tinsley*, we held that a preprinted form purporting to release "all other persons, firms, or corporations who are or might be liable" actually released only those parties whose names were typed in the blanks. *Id.* at 335 n. 1, 337.

*Tinsley* relied primarily on two Louisiana cases. *See Cates v. Wausau Ins. Co.*, 508 So.2d 1031 (La.Ct.App.1987); *Migliore v. Traina*, 474 So.2d 980 (La.Ct.App.1985). *Cates* involved a release on a preprinted form with the names of specific parties typed into the blanks. *Cates*, 508 So.2d at 1032–33. The form included a statement that the plaintiff broadly releases all parties from all possible claims. *Id.* The *Cates* court held that because of the preprinted form, it was not convinced that the plaintiff had intended to release all possible defendants. *Id.*

*Migliore* involved an agreement releasing "all other persons, firms and corporations, both known and unknown, of and from any and all claims." *Migliore*, 474 So.2d at 982. The *Migliore* court granted summary judgment for the defendant, holding that the release unambiguously evinced an intention to release unnamed parties from liability. *Id.* at 984.

This Court in *Tinsley* decided that *Cates*, not *Migliore*, governed the dispute because the release at issue appeared on a preprinted form with the names of specific parties typed into the blanks. *Tinsley*, 846 F.2d at 337. On the basis of the distinction between preprinted fill-in-the-blank releases and drafted releases, then, *Migliore* suggests that the drafted release in this case effectively released both named and unnamed parties. *Migliore*, 474 So.2d at 983–84.

But the Davises argue that another Louisiana appellate court rejected the reasoning of *Migliore*, relying on a Louisiana Supreme Court case decided before *Migliore*. *See Chatman v. Mid–America Indem. Co.*, 479 So.2d 677, 679 & n. 2 (La.Ct.App.1985) (citing *Carona v. State Farm Ins. Co.*, 458 So.2d 1275 (La.1984)). As the magistrate sensibly notes, however, all these cases— *Tinsley*, *Cates*, *Migliore*, *Chatman*, and *Carona*—deal with releases in the unique context of the uninsured motorist statute. The Supreme Court in *Carona* made clear that the policies underlying the uninsured motorist statute require that the Louisiana civil code articles on release be given a different effect in that context than in other contexts. *See Carona*, 458 So.2d at 1278–79.

We conclude that *Migliore* is still good law in Louisiana. Even in the unique context of the uninsured motorist statute, that case found that a broad release not executed on a preprinted form would be given literal effect. *See Migliore*, 474 So.2d at 983–84. Davis expressly discharged all other potential obligors. We see no reason to refuse to give literal effect to the clear language of the release.

■ Davis also claims that the release is void because he signed it on the basis of a misrepresentation or mistake of fact. The source of this fraud or error, according to

Davis, was a pleading of McKinney alleging that when the saw arrived from Boswork, it was new and free from defects.

This argument is unconvincing for two reasons. First, fraud may invalidate a settlement agreement if the party committing the fraud is a settling party. *See Wilson v. Aetna Casualty & Sur. Co.*, 228 So.2d 229, 232–33 (La.Ct.App.1969); *Lervick v. White Top Cabs, Inc.*, 10 So.2d 67, 72–73 (La.Ct.App.1942). But McKinney, the alleged source of the fraud in this case, was not a party to the settlement agreement.

Second, even if we accept the contention that Davis gave his consent to the release based on a mistake of fact concerning the role of various companies in the alleged wrongdoing, Davis and his lawyers had an obligation to determine the facts through discovery before entering into a broad release of all claims. A party to a settlement who "has the means in hand of ascertaining the facts, but neglects to [use those means] cannot thereafter have the settlement set aside because of mistake." *Talbot v. Douglas Moving & Warehouse Co.*, 228 So.2d 222, 224 (La.Ct.App.1969), *cert. denied*, 255 La. 247, 230 So.2d 94 (1970).

## Validity of the Consortium Claim

Mrs. Davis and Huskipower became parties to the dispute over four years after the chain-saw accident. Huskipower argues that (1) Mrs. Davis's claim for loss of consortium is barred by Louisiana's one-year prescription on a claim for loss of consortium, and (2) the pendency of Mr. Davis's claim for damages does not interrupt prescription on the consortium claim.[3] We find it unnecessary to consider this argument because Huskipower waived the defense by failing to plead it.

In a diversity action, state law defines the nature of a defense. *See Funding Systems Leasing Corp. v. Pugh*, 530 F.2d 91, 95 (5th Cir.1976). But "the Federal Rules of Civil Procedure provide the manner and time in which defense are raised and when waiver occurs." *Morgan Guaranty Trust Co. v. Blum*, 649 F.2d 342, 344 (5th Cir. Unit B 1981). Rule 8(c) characterizes a statute-of-limitations defense as an affirmative defense that is waived unless pleaded by the defendant. *See* Fed.R.Civ.P. 8(c). Since Huskipower failed to raise this defense in its pleadings, Huskipower waived it.[4]

Both the magistrate and the district judge failed to consider separately Mrs. Davis's claim for loss of consortium. Although this claim arose out of the same incident as Mr. Davis's claim, it is a separate cause of action. *See Poirier v. Browning Ferris Indus.*, 517 So.2d 998, 999 (La.Ct.App.1987). The district court concluded that Mr. Davis intended to release all possible defendants, including Huskipower, from liability. We agree. But since Mrs. Davis neither participated in nor signed the release, it cannot preclude her claim against Huskipower for loss of consortium. Since under federal law, Huskipower waived its affirmative defense of prescription, we remand to the district court Mrs. Davis's claim for loss of consortium.

## Denial of Motion for Voluntary Dismissal

The Davises also contend that the district court erred in refusing to grant their motion for voluntary dismissal without prejudice. In federal court, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the

---

3. *See Louviere v. Hartford Ins. Co.*, 531 So.2d 299, 300–01 (La.Ct.App.1988); *Poirier v. Browning Ferris Indus.*, 517 So.2d 998, 998–99 (La.Ct. App.1987).

4. About a year after removal to federal court, Huskipower mentioned the defense for the first time in a response to the plaintiffs' objection to the magistrate's report. If Huskipower had asked the district judge for leave to amend the pleadings to raise the affirmative defense, the judge might, in his discretion, have granted it. *See* Fed.R.Civ.P. 15(c). Because Huskipower never attempted to amend its pleadings, however, we need not consider whether allowing amendment at such a late stage of trial would have been acceptable.

court deems proper." Fed.R.Civ.P. 41(a)(2). We review only for an abuse of discretion the district court's denial of a motion for voluntary dismissal under this rule. *See Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.,* 903 F.2d 352, 360 (5th Cir.1990); *Yoffe v. Keller Indus., Inc.,* 580 F.2d 126, 129 (5th Cir.1978), *cert. denied,* 440 U.S. 915, 99 S.Ct. 1231, 59 L.Ed.2d 464 (1979).

A trial court should deny a motion for voluntary dismissal without prejudice if granting it would cause the defendant to "suffer some cognizable prejudice greater than the mere prospect of a second lawsuit." *Hartford Accident & Indem. Co.,* 903 F.2d at 360; *see* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2364 (1971 & Supp.1990). When a plaintiff fails to seek dismissal until a late stage of trial, after the defendant has exerted significant time and effort, then a court may, in its discretion, refuse to grant a voluntary dismissal. *Hartford Accident & Indem. Co.,* 903 F.2d at 360–61; *Kramer v. Butler,* 845 F.2d 1291, 1294–95 (5th Cir.), *cert. denied,* 488 U.S. 865, 109 S.Ct. 168, 102 L.Ed.2d 138 (1988).

The Davises moved to dismiss this case without prejudice more than a year after the case was removed to federal court. They filed their motion after months of filing pleadings, attending conferences, and submitting memoranda. Moreover, they filed their motion after the magistrate had considered the case and issued a comprehensive recommendation that was adverse to their position. Based on the record before us, we do not believe that the district judge abused his discretion in denying the motion for voluntary dismissal without prejudice.

*Conclusion*

We conclude that under the clear language of the release, Davis effectively discharged all potential obligors except McKinney from liability for his injuries. Moreover, Davis cannot escape from his obligations by claiming misrepresentation or mistake of fact. No party to the settlement participated in the alleged misrepresentation, and the alleged mistake was the result of Davis's failure to ascertain the facts before broadly releasing his claims.

We also conclude that the district judge did not abuse his discretion in denying the motion for voluntary dismissal without prejudice filed at a late stage of the trial. Since Huskipower waived its statute-of-limitations defense to Mrs. Davis's loss-of-consortium claim and since Mrs. Davis did not participate in the release, we remand this claim to the district court.

The judgment is AFFIRMED in part and REVERSED in part and REMANDED for further proceedings in accordance with this opinion.