## THE JOSEPH B. THOMAS.

(Circuit Court of Appeals, Third Circuit. November 22, 1906.)

### No. 4.

**1. SEAMEN—SHIPPING ARTICLES—LEGALITY OF PROVISIONS.**

A provision, in shipping articles signed by seamen for a voyage on a vessel then detained in port by ice, which usually went out within a very few days, that "the crew shall make no claim for wages or provisions while the vessel is detained by ice prior to departure," is not in violation of the statutes made for the protection of seamen, but is reasonable, and binding upon the crew where they had full knowledge of it before signing.

**2. SAME—RIGHT TO WAGES.**

Libelants signed as seamen for a voyage on a vessel then ready to sail from the port of Philadelphia, but detained by ice; the shipping articles containing a provision that they should make no claim for wages or provisions while the vessel was so detained. They went on board, and were furnished light work and given their provisions for a few days, and were then sent on shore by the master, but were told to be in readiness to come back whenever the vessel should be able to get away. When that time came, a week later, they either could not be found or refused to go. *Held*, that they were not discharged, and were not entitled to wages for the time they were on board, nor to extra pay, under Rev. St. § 4527 [U. S. Comp. St. 1901, p. 3077], as upon a wrongful discharge.

**3. ADMIRALTY—SUIT FOR WAGES—APPELLATE JURISDICTION.**

Where a number of libelants join in a suit in admiralty for wages, as permitted by Rev. St. § 4547 [U. S. Comp. St. 1901, p. 3087], their claims are several, and not joint, and cannot be added together to give jurisdiction to an appellate court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, § 719; vol. 2, Appeal and Error, §§ 276–279.]

**4. COURTS—JURISDICTION OF CIRCUIT COURT OF APPEALS—AMOUNT IN DISPUTE.**

The provision of Rev. St. § 631, limiting appeals from the District to the Circuit Court in equity and admiralty to cases where the sum in dispute exceeded $50, is not applicable to appeals to the Circuit Court of Appeals, but was superseded by the act establishing such courts, which creates a new appellate jurisdiction without any pecuniary limitation.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania, in Admiralty.

For opinion below, see 136 Fed. 693.

J. Hill Brinton, for appellants.

John F. Lewis, for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and LANNING, District Judge.

GRAY, Circuit Judge. This is an appeal from a decree of the District Court, dismissing the libel for wages, filed by the appellants against the ship "Joseph B. Thomas" and her master. The libel al-

leges that the libelants, five in number, had shipped as seamen on board the schooner "Joseph B. Thomas," for and during a voyage not exceeding three months, at the rate of $35.00 per month, and that for the due performance of said voyage, had signed shipping articles then in possession of the master; that the said shipping articles were signed on the 31st of December, 1903, and that libelants went on board the schooner January 2, 1904, at the port of Philadelphia, and while on board performed all duties required of them; that on January 7, 1904, prior to the departure of said schooner, they were discharged by her master without sufficient reason for so doing; that the said master justified his discharge of the libelants by the following clause, which was inserted in the articles prior to the shipment of the said crew, viz.:

"The crew shall make no claim for wages or provisions while the vessel is detained by ice prior to departure."

The libel then concludes as follows:

"That the libelants, being unlawfully discharged before the termination of said voyage and the expiration of 30 days from the date of shipment, are each entitled to one month's extra pay, viz., $35.00, in accordance with section 4527 of the Revised Statutes of the United States, making in all the sum of $210.00."

From the answer of the master of the schooner and from the testimony sent up in the record, it appears to be undisputed that the libelants were engaged as seamen, through a shipping agent, by the master of the schooner "Joseph B. Thomas," then in the port of Philadelphia, for a voyage from that port to Brunswick, Ga., and return, for a term not exceeding three calendar months, at the rate of wages of $35.00 per month; that shipping articles to this effect were signed by the libelants on December 31, 1903; that in addition to the usual stipulations contained in such articles, there was inserted in, or stamped upon, the same the clause set out in said libel, viz.:

"The crew shall make no claim for wages or provisions while the vessel is detained by ice prior to departure."

It is admitted that by order or request of the master, the libelants went on board the schooner, which was then tied up at a wharf in the port of Philadelphia, on the 2d day of January, 1904; that, while the port was not absolutely closed at that time, by ice, increasing frosts for some days following said 2d of January, made the navigation of the river so difficult that tugs could not be obtained to tow the schooner to sea, and it seems to be established by the testimony that it would not have been prudent to have attempted the same before the date of departure on January 14th. It appears by the undisputed testimony, that on the day the libelants went on board, they were ordered by the mate to clear the snow off the decks and put some lashings upon a deckhouse; that, with this exception, no work was required of them during their stay on board, but that they regularly received three meals a day. as to the character of which there was no complaint. On the 7th of January, it is admitted that libelants left the schooner, taking with them all their luggage. There is little conflict of testimony as to what occurred at the time of their leaving, and the reasons existing therefor. The libelants testified that the master of the schooner told them the

night before, that he could not afford to keep them any more on board, and that they were at liberty to go ashore. The captain and mate, on the other hand, testify that, as the men were getting restless, they were told that they might go ashore and earn what they could, while waiting for the vessel to sail, but should hold themselves in readi..._ss when notified of that fact. Seven days thereafter, on January 14th, the ice in the river having broken up sufficiently to permit the departure of the schooner, the master notified the shipping agent to have the crew on board, and the shipping agent testifies that after a diligent search, he could only find two of the crew, who refused to go on board. Another crew was obtained, and the vessel sailed on the day last named.

The contention of the libelants is that they were unlawfully discharged by the captain of the schooner on the 7th of January, and that in consequence, the vessel and her master are liable, under section 4527 of the Revised Statutes, for one month's wages, in addition to the wages for the seven days they were on board, at the rate of $35.00 a month.

On behalf of the appellees, it is contended that libelants were bound by what is called the "ice clause" in the articles, above referred to, and that no wages were consequently due until the day of sailing; that on that day, some of the crew not being on hand and others having refused to go on board, libelants had violated their contract and thereby forfeited all claim under it.

The question we are called upon to consider, therefore, is whether this clause was a binding obligation on the libelants, or should be disregarded as an abridgment of their rights under the law maritime, and inconsistent with the public policy recognized in that law, of protecting seamen from imposition, where undue advantage is taken of their ignorance and improvidence. It is conceded by counsel for libelants, that if the above clause as to wages and provisions shall not be deemed to be "opposed to the statutes made for the especial benefit and protection of seamen, the libelants are bound by their contract, and the conclusions of the learned court below are correct in the premises; in other words, if the libelants were in all respects sui juris, they may not be heard to complain that the contract was hard."

Notwithstanding the care and solicitude exercised by courts in protecting seamen from the results of ignorance and improvidence, in making their contracts, they are not to be exempted from contractual obligations freely and fairly made, and as to which no suspicion of misunderstanding or imposition attaches. Their service on shipboard is regulated by contract, express or implied, and the relation between them and the master of the ship is largely, if not altogether, a contractual one. It is only when a given stipulation of their general contract of shipment, signifies such improvidence or ignorance on the part of the seamen, as to make its enforcement unreasonable, or is such as contravenes a settled policy of the law maritime, that it will be considered void and without obligatory force. The stipulation here in question is:

"The crew shall make no claim for wages or provisions while the vessel is detained by ice prior to departure."

It is admitted that, before signing the articles, the inserted ice clause was distinctly read to the libelants, and that they fully understood the

same at the time of signing. In determining the reasonableness of this stipulation, it cannot be considered abstractly, but only in the light of the circumstances surrounding it. For this reason, we have re-cited the purport of the testimony as to the situation at the time the contract was made. If the words "prior to departure" had been omit-ted, the stipulation might or might not be reasonable, according to cir-cumstances. If, for example, the ship had started upon her voyage, and, short of her destination, should be detained by ice at some inter-mediate port or place, it would be unreasonable to say that the ship or the master could refuse provisions during the time of such detention, even though wages might be reasonably intermitted. On the other hand, the words "prior to departure," in the stipulation here in question, relieved it from the unreasonableness inherent in the case just suppos-ed. We are to consider that the testimony disclosed by the record shows that, when the libelants signed the articles, and went on board, they had knowledge that he river was blocked with ice. There is evi-dence, too, of the fact of which we might take judicial notice, that such blocking of the Delaware river by ice, at Philadelphia, is of temporary and, usually, of short duration, so that, though blocked with ice at the signing of the articles, it might be expected that the river would be clear enough to permit the departure of the schooner within a few days. As a matter of fact, she was detained only 14 days after the signing of the articles, and only 7 days after the crew left the vessel. In effect, it was the hiring of a crew on the condition that their services were to begin at a future day, to be determined by the freedom of the river from obstructing ice. Their going on board while the schooner was still detained by ice, and their being provisioned for the 7 days they were on board, was a partial waiving of the condition that no provisions were to be furnished before the vessel was ready to depart, and was doubtless the result of the belief on both sides that the detention would be of short duration. We see nothing unreasonable in the stipulation, in view of the circumstances under which it was made. The vessel was tied up to the wharf in Philadelphia, and the crew were in Philadelphia when they signed the articles, and the contract was admittedly made with full knowledge and understanding of the seamen that, under their contract, neither their services nor their keep or wages were to com-mence until the ice in the river permitted the departure of the vessel, and undoubtedly it was supposed at the time of entering into this con-tract, that the period during which the vessel would be ice-bound, would be a short one. A prolongation of the period beyond ordinary experi-ence, might make it unreasonable that seamen so shipping should be bound for a longer time than was usual in such cases. We have not, however, such a case here, as the men were on board for 7 days, and the vessel was ready to sail seven days after they left.

On the whole, we think there was no obligation, during the time that elapsed between the signing of the articles and the sailing of the ship, to pay wages or furnish provisions under the stipulation freely and under-standingly entered into by the libelants when they signed the articles. Quoad this transaction, the libelants were sui juris. They signed the articles in Philadelphia, where presumably they resided, at least tem-

porarily, and where presumably they could maintain themselves until the time when the ice might be expected to so break up as to allow the departure of the vessel, at which time, according to their contract, their service and compensation were to begin. We see no hardship in this situation so great, as to render the contract, freely and understandingly made in relation thereto, unreasonable.

Appellants, however, contend that such a contract is directly controlled by the mandatory provisions of certain statutes, and they refer us to sections 4511, 4524 and 4523 of the Revised Statutes [U. S. Comp. St. 1901, pp. 3068, 3075, 3076]. The record furnishes us with no copy of the shipping articles, but merely tells us that they were signed before a commissioner, and furnishes us with the special "ice clause" stamped thereupon, with the admission that the libelants thoroughly understood the same at the time of signing. We do not think that any of these sections, or all of them taken together, forbid the making of such a contract, or were meant to control the relation of the parties in contravention of the requirements of an express and reasonable contract, such as the one presented in the case at bar. We think with the trial judge that there is no evidence that the seamen commenced work prior to the departure of the vessel. The shoveling of snow off the decks, when they first went on board, would have taken only a few moments, and was much more than compensated for by the provisions furnished them during the five days. This is too trifling to be considered a commencement of work, within the meaning of the statute. All the evidence goes to show that the going on board, and being fed for five days, while the boat was tied at the wharf and ice-bound, was a favor to the libelants which the master was not obliged to continue, contrary to the stipulation of the articles in that regard. Outside of this stipulation, we are not shown where any time is specified in the articles for the commencement of work or presence on board of the libelants.

The sole question in the view thus taken, is, whether the seamen were discharged by the master in violation of the law of their contract, when he told them on the 7th of January that he could no longer furnish them with provisions until the vessel was ready to sail, and said they were at liberty to go ashore and get employment, if they pleased, in the interval. We agree with Judge McPherson in his finding, that "they were not discharged, although they so declare, but were merely directed to await on shore the time when the ship would begin her voyage," and with him we are "unable to perceive any obligation on the part of the ship to pay wages in the face of the contract." We also agree with him, that "certainly there is no liability to a penalty which is only to be inflicted in case of wrongful discharge."

We have discussed this appeal upon its merits, and must now take some notice of the motion to dismiss. The ground alleged for this motion is, that no appeal from a decree of a District Court, in a cause of admiralty jurisdiction, is allowable, unless the matter in dispute exceeds the sum or value of $50.00, exclusive of costs; this being the pecuniary limitation prescribed by section 21 of the judiciary act of 1789 (1 Stat. 83, c. 20), as amended by the act of March 3, 1803 (2 Stat. 244, c. 40), in regard to appeals in such causes from the District

Courts to the Circuit Courts. If this pecuniary limitation of the appellate jurisdiction of the Circuit Courts is applicable to the appellate jurisdiction of the Circuit Courts of Appeals in such cases, we have no doubt that we are without jurisdiction as to this case. It is admitted that the claim of each libelant is only $42.00, and the fact that the aggregate claims of the five libelants who were joined in the suit amount to $210.-00 does not suffice to give the required jurisdiction. The claims, though united in one suit, under the provisions of section 4547 of the Revised Statutes [U. S. Comp. St. 1901, p. 3087], are not joint but several. The claim of each libelant, though all joined in one libel, is several and individual, and the decree must be separate and distinct as to each claim, and not a joint decree for the whole amount. Where jurisdiction depends upon the amount of the claim, therefore, the test must be, not the aggregate of all the claims joined in one suit or libel, but, the amount of each individual claim. This being so, the pecuniary limitation of appellate jurisdiction to $50.00 would bar the appeal in this case, where the amount of each several claim joined in the libel is under $50.00. The citations in support of the motion to dismiss, abundantly support this statement of the law: Oliver v. Alexander, 6 Pet. 143, 8 L. Ed. 349; Stratton v. Jarvis, 8 Pet. 4, 8 L. Ed. 846; Rich v. Lambert, 12 How. 347, 13 L. Ed. 1017; Shields v. Thomas, 17 How. 3, 15 L. Ed. 93; Putney v. Whitmire (C. C.) 66 Fed. 385; The Columbia, 73 Fed. 226, 19 C. C. A. 436; Ex parte B. & O. R. R., 106 U. S. 5, 1 Sup. Ct. 35, 27 L. Ed. 78; Henderson v. Wadsworth, 115 U. S. 264, 6 Sup. Ct. 10, 29 L. Ed. 377; Gibson v. Shufeldt, 122 U. S. 27, 7 Sup. Ct. 1066, 30 L. Ed. 1083; Walter v. Railroad Co., 147 U. S. 370, 13 Sup. Ct. 348, 37 L. Ed. 206.

The more difficult question remains, whether the pecuniary limitation of appellate jurisdiction prescribed in section 21 of the judiciary act of 1789, as amended in 1803 and embodied in section 631 of the Revised Statutes, is applicable to the appellate jurisdiction of the Circuit Court of Appeals, as to final decrees of the District Court in the causes described in said section. Section 631 is as follows:

"Sec. 631. From all final decrees of a District Court in causes of equity or of admiralty and maritime jurisdiction, except prize causes, where the matter in dispute exceeds the sum or value of fifty dollars, exclusive of costs, an appeal shall be allowed to the Circuit Court next to be held in such district, and such Circuit Court is required to receive, hear, and determine such appeal."

By the provisions of this section, a specially limited and defined appellate jurisdiction from the decrees of District Courts had been vested in the Circuit Courts, from the time of the establishment of those courts down to 1891. By section 4 of the judiciary act of that year (Act March 3, 1891, c. 517, 26 Stat. 827 [U. S. Comp. St. 1901, p. 518]) it was provided:

"That no appeal, whether by writ of error or otherwise, shall hereafter be taken or allowed from any District Court to the existing Circuit Courts, and no appellate jurisdiction shall hereafter be exercised or allowed by said existing Circuit Courts, but all appeals by writ of error (or) otherwise, from said District Courts shall only be subject to review in the Supreme Court of the United States or in the Circuit Court of Appeals hereby established, as is hereinafter provided, and the review, by appeal, by writ of error, or otherwise, from the existing Circuit Courts shall be had only in the Supreme Court

of the United States or in the Circuit Courts of Appeals hereby established according to the provisions of this act regulating the same."

Sections 5 and 6 (26 Stat. 827, 828 [U. S. Comp. St. 1901, p. 549]) then proceed to distribute the appellate jurisdiction theretofore exercised by the Supreme Court and the said Circuit Courts, between the Supreme Court and the Circuit Courts of Appeals established by the act. These sections are in part as follows:

"5. That appeals or writs of error may be taken from the District Courts or from the existing Circuit Courts direct to the Supreme Court in the following cases:

"(1) In any case in which the jurisdiction of the court is in issue; in such cases the question of jurisdiction alone shall be certified to the Supreme Court from the court below for decision.

"(2) From the final sentences and decrees in prize causes.

"(3) In cases of conviction of a capital or otherwise infamous crime.

"(4) In any case that involves the construction or application of the Constitution of the United States.

"(5) In any case in which the constitutionality of any law of the United States, or the validity or construction of any treaty made under its authority, is drawn in question.

"(6) In any case in which the constitution or law of a state is claimed to be in contravention of the Constitution of the United States."

"6. That the Circuit Courts of Appeals established by this act shall exercise appellate jurisdiction to review by appeal or by writ of error final decision(s) in the District Court(s) and the existing Circuit Courts in all cases other than those provided for in the preceding section of this act, unless otherwise provided by law, and the judgments or decrees of the Circuit Courts of Appeals shall be final in all cases in which the jurisdiction is dependent entirely upon the opposite parties to the suit or controversy, being aliens and citizens of the United States or citizens of different States; also in all cases arising under the patent laws under the revenue laws, and under the criminal laws and in admiralty cases."

It is plausibly argued that the appellate jurisdiction of the Circuit Courts, as described in section 631 of the Revised Statutes, was, by these sections, transferred as it then existed to the Circuit Courts of Appeals, and retained the pecuniary limitation that theretofore had characterized it. The fallacy of this argument inheres in the theory, that by the act of March 3, 1891, there was merely a transference of certain appellate jurisdiction from one tribunal to another, and that consequently all conditions, whether of restriction or otherwise, were transferred with it. If this were so, the appellate jurisdiction of the Circuit Courts, given as to final judgments of a District Court in civil actions, by section 633 of the Revised Statutes, would be characterized by the same pecuniary limitation when exercised by the Supreme Court or the Circuit Courts of Appeals. This theory, however, does not correctly describe the function and purpose of the act of March 3rd, 1891. The appellate jurisdiction established thereby, while in most respects the same as to subject-matter and extent, as theretofore existed in the Circuit Courts and in the Supreme Court, was established anew and distributed between the Supreme Court and the then newly established Circuit Courts of Appeals. Section 4 of the act declares that "all appeals, by writs of error or otherwise, from said District Courts, shall only be subject to review in the Supreme Court of the United States or in the Circuit Court of Appeals hereby established,"

and by section 6, the Circuit Courts of Appeals established by the act are required to exercise appellate jurisdiction in all cases other than those provided in the preceding section. Moreover, it has been uniformly held that the appellate jurisdiction of the Circuit Courts of Appeals is subject to no pecuniary limitation, though the appellate jurisdiction of the Supreme Court before the passage of the act as to the same classes of cases, was subject to an important pecuniary limitation.

It is true that section 691 of the Revised Statutes, conferring appellate jurisdiction on the Supreme Court from final judgments of Circuit Courts, or of District Courts acting as Circuit Courts in civil actions, where the matter in dispute exceeds the sum or value of $2,000 (afterwards increased to $5,000) was expressly repealed by section 14 of the Act of March 3, 1891 (26 Stat. 829, c. 517 [U. S. Comp. St. 1901, p. 553]); but section 692, in which there are like provisions limiting the appellate jurisdiction of the Supreme Court in reference to appeals from final decrees of the Circuit Courts, in cases of equity and of admiralty and maritime jurisdiction, is not repealed by the said act, nor is there any express repeal in said act of section 695, establishing the appellate jurisdiction of the Supreme Court from all final decrees of a District Court in prize causes, and limiting the same to cases where the matter in dispute exceeds the sum or value of $2,000, and providing that, without reference to the value of the matter in dispute, the appeal shall be allowed, on the certificate of the district judge that the adjudication involves a question of importance. Yet it is significant that as to causes described in these two sections, appellate jurisdiction without pecuniary limitation has uniformly been held to have been conferred by the judiciary act of 1891, upon the Supreme Court and the Circuit Courts of Appeals. This latter act has been held to be a substitute for the old judiciary act, and supersedes and supplies the creation and regulation of appellate jurisdiction by said old act and its amendments, except where they are consistent with the provisions of the later act, or are preserved in force under the last paragraph of section 10 of that act.

This conclusion is clearly supported and made necessary by the decision of the Supreme Court in the case of The Paquete Habana, 175 U. S. 677, 20 Sup. Ct. 290, 44 L. Ed. 320. This was an appeal from the decree of District Courts of the United States for the Southern District of Florida, condemning two fishing vessels and their cargo as prizes of war. The two vessels were sold, one for the sum of $490 and the other for $800, and it was suggested that the court had no jurisdiction to hear and determine these appeals, because the matter in dispute in either case did not exceed the sum or value of $2,000, and the district judge had not certified that the adjudication involved a question of general importance. This brought directly before the court the question whether the limitations on the appellate jurisdiction, contained in section 695 of the Revised Statutes, above referred to, were abrogated by the act of March 3rd, 1891, "establishing the Circuit Courts of Appeals and creating a new and complete scheme of appellate jurisdiction, depending upon the nature of the different cases, rather than upon the pecuniary amount involved." Mr. Justice Gray, in delivering the opinion of the court, says:

148 F.—49

"The act of 1891 nowhere imposes a pecuniary limit upon the appellate jurisdiction, either of this court or of the Circuit Court of Appeals, from a District or Circuit Court of the United States. The only pecuniary limit imposed is one of $1,000 upon the appeal to this court of a case which has been once decided on appeal in the Circuit Court of Appeals, and in which the judgment of that court is not made final by section 6 of the act. Section 14 of the act of 1891, after specifically repealing section 691 of the Revised Statutes and section 3 of the act of February 16, 1875 (18 Stat. 316, c. 77 [U. S. Comp. St. 1901, p. 526]), further provides that 'all acts and parts of acts relating to appeals or writs of error, inconsistent with the provisions for review by appeals or writs of error in the preceding sections five and six of this act, are hereby repealed.'   26 Stat. 829, 830. The object of the specific repeal, as this court has declared, was to get rid of the pecuniary limit in the acts referred to.   McLish v. Roff, 141 U. S. 661, 677, 12 Sup. Ct. 118, 35 L. Ed. 893.   And, although neither section 692 nor section 693 of the Revised Statutes is repealed by name, yet, taking into consideration the general repealing clause, together with the affirmative provisions of the act, the case comes within the reason of the decision in an analogous case, in which this court said:   'The provisions relating to the subject-matter under consideration are, however, so comprehensive, as well as so variant from those of former acts, that we think the intention to substitute the one for the other is necessarily to be inferred and must prevail.'   Fisk v. Henarie, 142 U. S. 459, 468, 12 Sup. Ct. 207, 210, 35 L. Ed. 1080. The decision of this court in the recent case of United States v. Rider, 163 U. S. 132, 16 Sup. Ct. 983, 41 L. Ed. 101, affords an important, if not controlling precedent."

As to the last-mentioned case, the learned justice says:

"That judgment was thus rested upon two successive propositions:   First, that the act of 1891 gives appellate jurisdiction, either to this court or to the Circuit Court of Appeals, in all criminal cases, and in all civil cases 'without regard to the amount in controversy.'   Second, that the act, by its terms, its scope and its obvious purpose, 'furnishes the exclusive rule in respect of appellate jurisdiction on appeal, writ of error or certificate.' "

The opinion concludes as follows:

"We are of opinion that the act of 1891, upon its face, read in the light of settled rules of statutory construction, and of the decisions of this court, clearly manifests the intention of Congress to cover the whole subject of the appellate jurisdiction from the District and Circuit Courts of the United States, so far as regards in what cases, as well as to what courts, appeals may be taken, and to supersede and repeal, to this extent, all the provisions of earlier acts of Congress, including those that imposed pecuniary limits upon such jurisdiction; and, as part of the new scheme, to confer upon this court jurisdiction of appeals from all final sentences and decrees in prize causes, without regard to the amount in dispute, and without any certificate of the district judge as to the importance of the particular case."

The ratio decidendi of this case, we think, is controlling as to the case at bar, and no pecuniary limitation attaches to the appellate jurisdiction of this court.

Counsel for appellees, relying upon the case of North American Trading & Transportation Co. v. Smith, decided by the Circuit Court of Appeals for the Ninth Circuit (93 Fed. 7, 35 C. C. A. 183), made no argument upon this point. The result reached in that case, we think, was a desirable one, and the reasons given therefor were cogent, if not satisfactory. In view, however, of the later decision of the Supreme Court in The Paquete Habana, above referred to, the decision of the Circuit Court of Appeals cannot be followed, and the motion to dismiss the appeal is denied and the judgment below affirmed.