## McDONALD et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. July 10, 1923.)

No. 231.

**1. Seamen ⊙⇒7—Contracts for services are binding, unless imposition appears.**

It is only when a given stipulation of their general contract of employment signifies such improvidence or ignorance on the part of the seamen as to make its enforcement unreasonable, or is such as contravenes a settled policy of the law maritime, that it will be considered void and without obligatory force.

**2. Seamen ⊙⇒13—Provision in articles for "return" transportation to port of sailing held not to apply to seamen who signed on at a foreign port.**

A provision in shipping articles, on a ship which commenced her voyage at Seattle, that in case she did not return to a Pacific port such seamen as

desired would be furnished "return transportation to Seattle," with subsistence, *held* not to entitle seamen who signed on in England to transportation to Seattle from New York, where the voyage ended.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Return.]

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by A. J. McDonald and others against the United States. Decree for libelants, and respondent appeals. Reversed.

The several libelants, nine seamen, file libels against the United States of America, each claiming $149.47, with interest and costs.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y. (Burlingham, Veeder, Masten & Fearey, Ray Rood Allen, and William J. Dean, all of New York City, of counsel), for appellant.

Frederick R. Graves, of New York City, and Howard C. Lake, of Pleasantville, N. Y., for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The libel of each of the appellees seeks to recover subsistence and railway transportation from New York to Seattle. Each shipped as seaman on the Western Cross while in England; the vessel finishing its voyage in New York. The shipping articles contained the following clause:

"* * * Now bound from the port of Seattle, Wash., to Portland, Or., for cargo, thence to such ports and places in the United Kingdom as the master may direct, and such other ports and places in any part of the world as the master may direct, and back to a final port of discharge to be designated by the master, for a term of time not exceeding 12 calendar months."

Another provision reads:

"It is also agreed that, in case the vessel does not return to the Pacific Coast in the United States, officers and men who desire return transportation to Seattle must so declare when signing off. Such officers and men will be furnished railway tickets, sleeper tickets, and $5 per day subsistence for time en route without stopover. Mates, chief engineer, three assistant engineers, purser, chief steward, and wireless operator will be furnished first class transportation and sleeper; remainder of crew tourist transportation and sleeper. Wages of licensed officers will run until arrival at port of signing on. Cash will not be paid in lieu of transportation. Overtime to be paid as per Seattle schedule. Crew to load and discharge all cargoes, if required by the master."

The claim, in brief, is one for subsistence and transportation from New York, where the vessel was laid up, to Seattle, Wash. As here, the service of seamen on shipboard is usually regulated by contract. Here it is expressed in writing and the relation is contractual.

[1] The courts are accustomed to consider seamen as peculiarly entitled to their protection, and contracts for their services will not be construed with the strictness which obtains at common law. Boulton v. Moore (C. C.) 14 Fed. 922. The courts will scrutinize these contracts closely, to ascertain whether any imposition is made on the seamen, and any obscurity, uncertainty, or ambiguity will be resolved

in favor of the seamen and against the master; and it is only when a given stipulation of their general contract of employment signifies such improvidence or ignorance on the part of the seamen as to make its enforcement unreasonable, or is such as contravenes a settled policy of the law maritime, that it will be considered void or without obligatory force. The Joseph B. Thomas, 148 Fed. 762, 78 C. C. A. 428. The maritime law will be presumed to control the contract.

[2] The shipping articles were signed by the seamen and the master, and the contract was executed before the libelants proceeded on the voyage. All this was done to comply with the law and the articles are valid and binding. They set forth clearly and definitely the nature of the intended voyage, the port or country at which it was to terminate, and the duration thereof. Provision was made for transportation and subsistence, if return was not made to the Pacific Coast for officers and men who desired return transportation to Seattle. It will be noted that the articles provide for "return transportation to Seattle"; not merely transportation to Seattle. The word "return" must be given its full meaning, as intended by the parties at the time the articles were signed. It implies going back to a former location. "Return" implies prior existence in some state or condition. Webster defines it:

"To turn back; to go, or come again, to the same place or condition." Clyatt v. United States, 197 U. S. 207, 25 Sup. Ct. 429, 49 L. Ed. 726.

We believe that the articles intended that, for seamen who signed on at Seattle, return transportation was intended for them to go back to Seattle, in the event that the vessel did not call there upon her return to the United States. The language should not be strained or tortured into the meaning that seamen who signed on in England would obtain return transportation to Seattle when the vessel landed in New York. Criticism offered by way of suggestion as to language which might have been used to express what the parties intended, is not helpful. We think the parties made plain their intent in the phrase employed. It was a bona fide return that was intended; thus the use of the phrase "cash will not be paid in lieu of transportation."

An effort was made to vary the terms of these articles by the offering of and reception of parol evidence of the talk with officers of the ship, but there is no evidence indicating that the parties were misled by the articles, which are clear and easily understood. The attempt, however, to vary them by tending to show that any person in authority assented to an arrangement different from that expressed in the written articles, has failed. The written articles are held here to be sufficient and binding upon the parties.

Decrees reversed.