**Donald WIECHENS; Gary and Deborah Wiechens, husband and wife; and Wiechens Properties Limited Partnership, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 00–CV–1858PHX–SMM.**

United States District Court, D. Arizona.

Sept. 16, 2002.

Jerome E. Elwell, Peter Ambelang, Warner Angle Hallam Jackson & Formanek, PLC, Phoenix, AZ, for plaintiffs.

Jennifer A. Giaimo, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## ORDER

McNAMEE, Chief Judge.

Pending before the Court are Plaintiffs' Motion for Partial Summary Judgment (Doc. # 20) and Defendant's Cross–Motion for Summary Judgment (Doc. # 22). After considering the arguments raised by the parties in their briefing and in oral argument, the Court now issues the following ruling.

## BACKGROUND

Plaintiff Donald Wiechens, a single man, and Plaintiffs Gary and Deborah Wiechens, husband and wife ("Plaintiffs"), are partners in the Wiechens Properties Limited Partnership, an Arizona limited partnership (the "Partnership"). (Compl. at ¶ 1.) The Partnership owns land within the boundaries of the Harquahala Valley Irrigation District ("HVID"). (Compl. at ¶ 9.) The HVID is an Arizona municipal corporation that was formed in 1964 for the purpose of establishing a local water distribution system in and about Harquahala Valley, Arizona. (Def.'s Mem. in Supp. of Mot. for Summ. J. at p.2.)

Although Plaintiffs and Defendant United States of America ("Defendant") disagree about the origin and duration, it is undisputed that the Partnership obtained

the right to receive Colorado river water on an annual basis to irrigate its land that was located within the boundaries of the HVID ("water rights"). (Def.'s Resp. to Pls.' Mot. for Summ. J. at pp.4–5.) In December 1992, the HVID and the United States Department of Interior ("Department of Interior") entered into a contract whereby the HVID landowners were allowed to sell their water rights back to the government without an accompanying sale of the land. (Pls.' Mot. for Partial Summ. J. at pp.1–2.)

The Partnership opted to retain its land within the boundaries of the HVID, but to exchange its water rights for an interest in farm land. (*Id.* at p.2.) The Partnership initially assigned its water rights to Yuma Title & Trust Company ("Yuma Title"). (Def.'s Mem. in Supp. of Mot. for Summ. J. at p.3.) Yuma Title, in turn, relinquished the Partnership's water rights to the HVID, which sold all the water rights it received from the HVID landowners to the Department of Interior. (Pls.' Mot. for Partial Summ. J. at p.2.) After paying expenses, HVID agreed to pay the district landowners approximately $24,000,000, prorated to the acreage owned by each, for their water rights. (*Id.* at p.2.)

The HVID paid Yuma Title $495,924.99 for the Partnership's relinquished water rights. (Def.'s Statement of Facts in Support of Motion for Summary Judgment ("Def.'s SOF") at ¶¶ 4–7.) The HVID also paid Donald Wiechens, the Partnership's general partner, $34,022.88 for the Partnership's relinquished water rights. (Def.'s SOF at ¶¶ 4–7.) Yuma Title then transferred the $495,924.99 to a third-party, Blohm's Farms, Inc., in exchange for the transfer of title to approximately 160 acres of certain farm land to the Partnership. (Def.'s SOF at ¶ 8; Pls.' Mot. for Partial Summ. J. at p.2.) The total consideration for conveyance of the Blohm's Farms land to the Partnership was $567,810. (Def.'s SOF at ¶ 9.) Plaintiffs maintain that they did not report any resulting income from the above transactions to the Internal Revenue Service ("IRS") because they believed the transactions qualified for non-recognition tax treatment under 26 U.S.C. § 1031. (Pls.' Mot. for Partial Summ. J. at p.2.)

On November 3, 1997, the IRS made assessments against Plaintiff Donald Wiechens, for tax in the amount of $101,395.00 and for interest in the amount of $37,277.64 with respect to the 1993 tax year. (Def.'s Mem. in Supp. of Mot. for Summ. J. at pp. 1–2.) On November 10, 1997, the IRS made assessments against Plaintiffs Gary and Deborah Wiechens for tax in the amount of $97,986.00 and for interest in the amount of $36,255.80 with respect to the 1993 tax year. (*Id.*) Plaintiffs made payments with respect to their 1993 tax returns. (*Id.*)

Plaintiffs initiated this tax refund action with a complaint filed in the United States District Court for the District of Arizona on September 28, 2000. Both Plaintiffs and Defendant have filed motions for summary judgment. Plaintiffs contend that its water rights constitute an interest in real property, that the properties exchanged were of "like-kind" and, therefore, that the exchange qualifies for non-recognition treatment and any gain realized is not taxable. (Pls.' Mot. for Partial Summ. J. at p.5.) Defendant claims that Plaintiffs' exchange of water rights for farm land was not an exchange of "like-kind" properties under 26 U.S.C. § 1031 and, therefore, that Plaintiffs' transaction does not qualify for non-recognition treatment and is taxable. (Def.'s Mem. in Supp. of Mot. for Summ. J. at p.2.)

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents,

viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (1995); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Jesinger,* 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Jesinger,* 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548; *see also Citadel Holding Corp. v. Roven,* 26 F.3d 960, 964 (9th Cir.1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Celotex,* 477 U.S. at 317, 106 S.Ct. 2548. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir.1995).

## DISCUSSION

### I. The Partnership's water rights constitute an interest in real property.

Plaintiffs, in their motion for partial summary judgment, assert that the facts of this case are undisputed and maintain that the only issue for the Court to resolve is if the Partnership's water rights constitute an interest in real property. Plaintiffs contend that the Partnership's water rights are an interest in real property and, as a result, argue that the exchange of its water rights for farm land qualifies as a "like-kind" exchange subject to non-recognition treatment under 26 U.S.C. § 1031. For the purposes of the Motion for Summary Judgment, Defendant, does not dispute Plaintiffs' assertion that the Partnership's water rights constitute an interest in real property, but Defendant challenges Plaintiffs' argument that the exchanged water rights and farm land are "like-kind" property.

■ Plaintiffs argue that Arizona courts have concluded that water rights are interests in real property. Plaintiffs support this contention by citing *Paloma Investment Limited Partnership v. Jenkins,* 194 Ariz. 133, 978 P.2d 110 (1998), in which the Arizona court stated "[i]n general, water rights are property rights. *In the Matter of the Rights to the Use of the Gila River,* 171 Ariz. 230, 235, 830 P.2d 442, 447 (1992). Those rights are interests in real property. *See* 93 C.J.S. Waters § 1 (1956)." The Court agrees with Plaintiffs' assertion that based on the *Paloma* decision, as well as later Arizona decisions, the Partnership's water rights do constitute an interest in real property. However, further analysis is required to determine if the Partnership's exchange satisfies the requirements for non-recognition status under 26 U.S.C. § 1031.

## II. The Partnership's water rights originated with the November 18, 1983 water service subcontract and are limited.

Plaintiffs and Defendant dispute the origin and duration of the Partnership's water rights. Plaintiffs assert that the Partnership's water rights were perpetual, that the water rights originated from the United States Supreme Court decision in *State of Arizona v. State of California*, 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963), and that the water rights were definitively established by a later Department of Interior water allocation notice, 48 Fed.Reg. 12446 (Mar. 24, 1983). (Pls.' Resp. to Def.'s Mot. for Summ. J. at p.4.) Defendant, on the other hand, contends that neither the Supreme Court's decision in *Arizona v. California*, nor the March 24, 1983 Department of Interior water allocation notice entitled the Partnership or the other HVID landowners to perpetual water rights. Rather, Defendant argues that the HVID landowners became entitled to limited water rights by virtue of a November 18, 1983 water service subcontract ("Subcontract") between the Department of Interior, the Central Arizona Project ("CAP") Water District and the HVID. (Def.'s Corrected Reply to Pls.' Resp. to Def.'s Mot. for Summ. J. at p.2.)

The background and disposition of the HVID landowners' water rights were recently examined by the Tax Court in *Gladden v. Commissioner*, 112 T.C. 209, 1999 WL 218904 (1999). The *Gladden* court stated that the *Arizona v. California* decision entitled the State of Arizona, but not individual parties, to an annual claim of 2.8 million acre-feet of Colorado River water. *Id* at 210. Further, the court stated that the HVID was formed for the purpose of establishing a local water distribution system in and about the Harquahala Valley, and that irrigation districts may purchase or acquire water rights for irrigation pur-

poses. *Id.* at 211. Additionally, the *Gladden* court determined that the March 24, 1983 Department of Interior notice initially allocated 7.67 percent of non-Indian agricultural lower Colorado River water for redistribution to the HVID, but not to individual landowners, for the purpose of irrigating farmland located within the geographic boundaries of the HVID water district. *Id.* at 211–12. The *Gladden* court further stated that a November 18, 1983 Subcontract between the Department of Interior, the CAP Water District and the HVID established delivery of allocated Colorado River water by the CAP Water District to the HVID for a 50–year period. *Id.* at 212. Notably, the *Gladden* court determined that individual landowners, such as the Partnership, although not named in the November 18, 1983 Subcontract, became entitled to receive an allocation of Colorado River water from the Subcontract only if the individual's land qualified as "eligible land" pursuant to the Subcontract. *Id.* at 212. Specifically, the *Gladden* court stated "under the Subcontract, the [landowner] was entitled to receive each year from [the HVID] a specified quantity of Colorado River water." *Id.* Throughout the remainder of the *Gladden* court's opinion and discussion of the HVID landowners' water rights, the court refers to the HVID landowners' water rights as being derived from the Subcontract. *See id.* at 213–16, 222–23.

On appeal, the Ninth Circuit did not dispute the *Gladden* court's determination of the origin and duration of the HVID landowners' water rights. The Ninth Circuit stated "[i]n 1983, [the HVID] obtained the right to take Colorado River water for redistribution within its boundaries and the [individual landowners] in turn obtained water rights from [the HVID]." *Gladden v. Commissioner*, 262 F.3d 851, 852 (9th Cir.2001).

Although Plaintiffs claim that the March 24, 1983 Department of Interior notice established the Partnership's water rights, the Court disagrees. First, the Court notes that when the Partnership acquired its interest in land, and thereafter until 1983, the Partnership did not have vested property rights in Colorado River water. In 1983, the Partnership acquired Colorado River water rights separately from any acquisition or sale of its ownership interest in the land.

Secondly, it is apparent to the Court that the Partnership's water rights originated from the November 18, 1983 Subcontract and that the rights were limited. The March 24, 1983 notice did not allocate water rights to individual landowners but, instead, specifically states that "[a] final allocation of CAP water and a contract with the [Department of Interior] Secretary for delivery of water is required . . . ." (1983 WL 133337 (F.R.) at p.12450.) The December 1, 1992, Master Agreement for the relinquishment of CAP water between the parties further supports the Court's view by stating, "[u]nder a decision promulgated in . . . the Federal Register, dated March 24, 1983, the Secretary allocated to the HVID certain CAP water. Thereafter, the HVID executed the [November 18, 1983] Water Service Subcontract under which it is entitled to CAP water with an agricultural priority." (Master Agreement for the Relinquishment of Central Arizona Project Water at ¶ 3.3.)

The March 24, 1983 notice and the November 18, 1983 Subcontract also place many limitations on the water rights. For example, both documents limit the HVID to 7.67 percent of the total supply of agricultural water available for delivery from CAP. The documents provide that the CAP water may only be used for irrigation. The documents also stipulate that during water shortages, all municipal, industrial, and Indian uses of the water have priority over non-Indian irrigation uses. Finally, the November 18, 1983 Subcontract, under which the Partnership's water rights derived, is limited to a 50–year period. Based on these factors, the Court agrees with the finding of the *Gladden* Tax Court and the Ninth Circuit's affirmation that the water rights at issue originated from the November 18, 1983 Subcontract. Thus, the Partnership's water rights are limited in quantity, priority, and to a 50–year duration.

### III. The Partnership's exchange of water rights for farm land was not an exchange of "like-kind" properties under 26 U.S.C. § 1031.

Typically, taxpayers must recognize gain or loss upon the sale or exchange of property. 26 U.S.C. § 1001. Therefore, as a general rule, a transfer of property in exchange for money or other property is taxable. An exception, however, provides that no gain or loss shall be recognized upon an exchange of like-kind properties. 26 U.S.C. § 1031(a). Treasury Regulations explain the "like-kind" property requirement as follows:

> As used in § 1031(a), the words 'like-kind' have reference to the nature or character of the property and not to its grade or quality. One kind or class of property may not, under that section, be exchanged for property of a different kind or class.

Treas. Reg., 26 C.F.R. § 1.1031(a)–1(a)(2)(b). The elements of proof to establish that a property transfer qualifies as a like-kind exchange are as follows: (1) there must be an exchange, (2) the properties exchanged must be of a like-kind, and (3) the property transferred and the property received must be held by the taxpayer either for use in a trade or business, or for investment. 26 U.S.C. § 1031(a).

Plaintiffs contend that because the Partnership's water rights constitute an interest in real property, its exchange of the water rights for farm land qualifies as a like-kind exchange and is not taxable. However, Defendant counters that, "not every exchange of real property interests meets the section 1031 like-kind requirement." *Smalley v. Commissioner*, 116 T.C. 450, 2001 WL 667858 (2001). Defendant contends that a 1955 IRS Revenue Ruling (Rev.Rul.55–749) discussed the tax consequences of an exchange of water rights for a fee simple interest in land. Revenue Ruling 55–749 clearly advises that water rights of a limited amount or duration are not sufficiently similar under § 1031 to a fee simple interest in land. The Court is persuaded by the argument that an exchange of non-perpetual water rights, such as the Partnership's, for a fee simple interest in land does not satisfy § 1031.

Plaintiffs also contend, however, that even if the Partnership's water rights are limited to a 50–year duration, the water rights should still be considered of a like-kind with the fee simple interest in the farm land. To support this argument, Plaintiffs reference Treasury Regulation § 1.1031(a)–1(a)(2)(c), which sets forth examples of exchanges of properties that are of a like-kind. 26 C.F.R. § 1.1031(a)–1(a)(2)(c). One example, on which Plaintiffs rely, is the exchange of a leasehold of a fee with 30 years or more to run for real estate. *Id.* Plaintiffs argue that the Partnership's water rights, which the Court views as limited to a 50–year duration, are equivalent to the leasehold of a fee for 30 years or more and, therefore, constitute a like-kind exchange.

The Court agrees with Defendant's argument that equating the Partnership's water rights to a leasehold of a fee for 30 years or more is inappropriate. As the Tax Court stated in *Koch v. Commissioner*, 71 T.C. 54, 65, 1978 WL 3304 (1978),

application of § 1031 "requires a comparison of the exchanged properties to ascertain whether the nature and character of the transferred rights in and to the respective properties are substantially alike." Factors to be considered in this analysis include "the respective interests in the physical properties, the nature of the title conveyed, the rights of the parties, [and] the duration [of the interests]." *Id.* The documentary evidence presented by the parties, as previously discussed, establish that the Partnership's water rights were narrowly restricted, unlike a fee simple interest in land. Although the Court agrees with Plaintiffs, that the Partnership's water rights constitute an interest in real property, the Court finds that the Partnership's water rights were limited in priority, quantity, and duration, and they were not sufficiently similar to the fee simple interest that it acquired in the Farm Land to qualify as like-kind property.

## CONCLUSION

For the reasons stated in the foregoing discussion,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. # 20) is **DENIED,**

**IT IS FURTHER ORDERED** that Defendant's Cross–Motion for Summary Judgment (Doc. # 22) is **GRANTED.**